[Civ. No. 39420. First Dist., Div. Four. Mar. 4, 1977.]

GENE D. McGLINN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
FIREMAN'S FUND INSURANCE COMPANY et al., Respondents.

**COUNSEL**

Morgan, Beauzay, Hammer, Ezgar, Bledsoe & Rucka and Robert T. Bledsoe for Petitioner.

Philip S. Miyamoto, Thomas J. McBirnie, Hoge, Fenton, Jones & Appel and Raymond W. Haworth for Respondents.

**OPINION**

RATTIGAN, J.—Gene D. McGlinn is the applicant for workers' compensation benefits in four successive proceedings to be described. He petitioned respondent Workers' Compensation Appeals Board for reconsideration of a combination of awards, made by a board referee, in which it was determined that applicant was not entitled to certain temporary disability benefits and medical expenses because they were not attributable to any of three prior industrial injuries he had received. The board denied his petition. We granted review of the board's action.

All of the injuries involved applicant's back. He received the first one while working for Herwig of California in 1969. He sought workers' compensation benefits in proceeding number 27062, which he commenced in September 1969. He was again injured in July 1970, while working for Northwestern Drywall. This resulted in proceeding number 30536, which he commenced in November of 1970.

The workers' compensation insurance carriers for Herwig of California and Northwestern Drywall are respondents Fireman's Fund Insurance Company and General Insurance Company of America, respectively. Each carrier regularly appeared in the two proceedings mentioned. In "Supplemental Findings And Award[s]" filed in each on August 3, 1972, after various proceedings in both, applicant was given permanent disability ratings of 15¼ percent for the 1969 injury and 7½ percent for the one incurred in 1970, and was awarded disability benefits accordingly. In each proceeding, he was also awarded "[a]ll further medical treatment reasonably required to cure or relieve from the effects of the injury herein."

The 1969 injury was a compression fracture for which applicant had necessary back surgery (a spinal fusion) followed by a lengthy period of convalescence. On August 13, 1973, he went to work for Senco of California (hereinafter Senco) in a job which required him to engage in heavy lifting. He worked at Senco for nine months, during and after which the following events occurred in 1974:

While on the job in March, applicant experienced severe back pains and consulted Richard T. Okumura, M.D. Dr. Okumura hospitalized him for the back trouble from April 14 to April 19 and from April 29 to May 9. Applicant returned to his Senco job after each hospitalization, but was laid off on May 16 for reasons not associated with industrial

injury. Dr. Okumura did not release him for work until July 1, when he accepted less strenuous employment by San Jose Friction Materials (who is not involved in the proceedings under review). He worked there until he was similarly laid off on September 6. While working around his home later in that month, he experienced another seizure of severe back pain. He again consulted Dr. Okumura and was hospitalized for five more days commencing September 26, 1974.

In October of 1974, applicant filed with the appeals board (1) a petition to reopen proceeding No. 27062, in which he claimed "new and further" temporary and permanent disability from the 1969 injury; (2) a petition to reopen number 30536, in which he made the same claim relative to the 1970 injury; (3) a new application (No. 43607) in which he sought workers' compensation benefits for a specific industrial injury he claimed to have incurred on March 22, 1974, while working for Senco; and (4) a new application (No. 44636) in which he sought benefits for a cumulative industrial injury he claimed to have incurred from his "repetitive work activities" during the nine months he had worked for Senco.

These petitions and applications resulted in consolidation of the four cases for further proceedings, in which Fireman's Fund Insurance Company and General Insurance Company of America again appeared as the respective insurance carriers for applicant's 1969 and 1970 employers. Respondent Continental Casualty Company appeared as the carrier for Senco. Applicant filed medical reports by Dr. Okumura and by Arthur H. Holmboe, M.D. Continental Casualty Company filed a report by James B. Ludwig, M.D.

The medical and other evidence was received, and applicant testified, at hearings conducted by a board referee on and after March 26, 1975. On March 22, 1976, the referee filed:

(1) In number 27062, "Supplemental Findings And Award" in which he (the referee) found that applicant had not incurred "new and further" disability from the 1969 injury.

(2) In number 30536, "Supplemental Findings And Award" in which the referee made the same finding relative to the 1970 injury and denied applicant's petition to reopen;

(3) In number 43607, "Findings And Award" in which the referee found that applicant had not sustained a specific industrial injury while working for Senco on March 22, 1974, as alleged in the application; and,

(4) In number 44636, "Findings And Award" in which the referee found that applicant had incurred the cumulative industrial injury alleged in the application, fixed a permanent disability rating of 4¾ percent for that injury, found "temporary total disability" to have occurred from May 17, 1974, through June 30, 1974 (i.e., between the times when applicant was laid off at Senco and Dr. Okumura subsequently released him for work), awarded indemnity payments accordingly, and awarded medical expenses incurred by applicant from February 1 through—but not after—September 6, 1974.

Applicant did not challenge the result reached in number 43607, but petitioned the board for reconsideration of the findings and awards made in the other three proceedings. The referee filed a report ("Report And Recommendation") in which he analyzed the three awards and recommended that the board deny applicant's petition. In an "Order Denying Reconsideration" filed on June 4, 1976 (with one commissioner dissenting), the board adopted the report in full and denied the petition. We granted applicant's petition for review of this order.

Applicant contends on the review, as he did in his petition for reconsideration, that the evidence establishes that the seizure he experienced at his home after September 6, 1974,[1] was an "aggravation" of the back condition which had been caused by the three industrial injuries he had received in 1969, 1970 and earlier in 1974; that he is accordingly entitled to reimbursement of his self-incurred medical expenses, and to temporary disability benefits, at pertinent times after the dates upon which both were terminated in the award made in number 44636 (June 30 and September 6, respectively) and that all three respondent insurance carriers are responsible for these benefits because of the involvement of all three prior industrial injuries.[2]

[1]Except where otherwise expressly indicated, all dates hereinafter mentioned refer to the calendar year 1974.

[2]Among the three carriers who appeared as respondents before the board, only Continental Casualty Company (Senco's) appeared in response to applicant's petition for the writ of review and in the subsequent proceedings in this court. According to the board's return to the writ, Continental Casualty Company and Fireman's Fund Insurance Company (the 1969 employer's carrier) contested applicant's petition for reconsideration by answering it; General Insurance Company of America (the 1970 employer's carrier) did not.

■ As shown by the referee's report which it adopted in full, the board rejected these contentions upon the basis that the September seizure was a "non-industrial injury," incurred by applicant in an "incident at home," to which all his needs and complaints after September 6 were *solely* attributable and were accordingly *apportioned* in full. The evidence cited by the board for these conclusions consisted of all three of the medical reports received by the referee; the board expressly stated that two of them (Dr. Holmboe's and Dr. Ludwig's) "ascribed" applicant's medical treatment and temporary disability, after September 6, "to the nonindustrial injury of September 1974." The question is whether these conclusions are supported by all the evidence. We have determined that they are not, and that the order denying reconsideration must be annulled.

According to the testimony of applicant himself, there was no "incident," nor did he experience anything which might be described as an "injury," while he was working at his home after September 6; all that happened at that place and time, *while* he was working, was intolerably severe recurrence of back pains which he had steadily suffered since he was seized with them on the Senco job in March, and for which he had twice been hospitalized prior to September.[3]

---

[3]We refer to this testimony by applicant at the hearing conducted on March 26, 1975, which is his entire testimony concerning the events of September 1974:

"Q. Now, did anything happen in September to cause you to be re-hospitalized?

"A. [By applicant] *No,* I was just working in the yard mowing the lawn with a power lawn mower, trimming hedges, which I normally do on weekends, and *my back had not been right since March* of that year, and *it kept getting progressively worse,* and it *finally got to the point* where I could not stand the pain, and I called Dr. Okumura, and he re-hospitalized me.

"............

"Q. And it was during this couple of weeks . . . [after having been laid off from the last job on September 6, 1974] . . . that you were working around in your yard, and *the pains began to get worse.*?

"A. Correct. I think I stated earlier *there was no specific incident. I. had pain right along.*

"Q. Were you doing any painting or carpenter work during that two-week period?

"A. I was painting around the house doing yard work, as I stated." (Italics added.)

In his "Summary Of Evidence" received at the hearing mentioned, the referee paraphrased this testimony as follows: "*Ever since* the March, 1974 incident . . . [applicant] . . . has had *a constant problem with his back.* . . . On 9/25/74 he was hospitalized again by Dr. Okumura, and he was not discharged until October 2nd. On that day [*sic*] he was working in his yard. He had been mowing the lawn with a power mower and trimming hedges, and the *pain in his back got just too much for him to stand,* and he called the doctor. . . . He was laid off on 9/6. . . . He did not apply for work elsewhere. Wanted to rest for a couple of weeks. He was *having pain right along during this time.* There was *no particular incident* in his yard. He was also painting around the house at the time." (Italics added.)

Dr. Okumura's report states that applicant was hospitalized in mid-April for "severe pain" and "a lot of muscle spasm," and was again hospitalized in April for a "recurrence" of the pain. Of the September episode, the report states only that applicant was again hospitalized "on September 26, 1974 with *recurrent back pain*" (italics added); Dr. Okumura made no other reference to an "incident" and none to an "injury" in September. He further reported that applicant had had "intermittent" episodes of back pain and "intermittent *and recurrent spasm*" (italics added) thereafter until January 21, 1975 (the date Dr. Okumura had last seen him before writing the report). Dr. Okumura expressly attributed all of these complaints, commencing in March and without exception, to the "initial injury which led to compression fracture" (i.e., to applicant's 1969 injury).

Dr. Holmboe's report refers to "an incident at home in September," but in the narrative context of a history, given him by applicant, which describes the September episode precisely as applicant described it in his testimony previously quoted. (See fn. 3, *ante.*) In that context, Dr. Holmboe spoke of the "incident" as only one of several "exacerbations" of a back condition which had been recurrent before and since March, and for which applicant's "initial injury" was the "prime responsibility." His reference to the "initial injury" also reached as far back in time as the 1969 injury.

Dr. Ludwig concluded his report with language which ostensibly ascribed applicant's post-September 6 complaints to the September episode mentioned,[4] but which did not serve this purpose for several reasons. The ostensible conclusion is again controlled by a context in which the author (quoting applicant and the other two physicians) refers to constant "back complaints" at all times in and after March and to the September episode as the onset of "*increased* back complaints" (italics added) which did not accompany an "injury."[5]

---

[4]"In summary, I believe that if one accepts Dr. Okumura's and Dr. Holmboe's history, Mr. McGlinn's increased back complaints while working at Senco in the Spring of 1974 should be regarded as 50 percent recurrence of the previous back injury and 50 percent aggravation as the result of the work he had to perform at Senco. If one accepts Mr. McGlinn's version, I would regard the back complaints occurring in the Spring of 1974 requiring two hospitalizations, as an aggravation resulting from the work activity that he had to perform at Senco on March 22, 1974. I believe that he made a satisfactory recovery by July 1, 1974, at which time he went to San Jose Friction Materials as a salesman. *The further disability and necessity for medical care apparently arise out of the activities that he was performing in his yard in September, 1974.*" (Italics added.)

[5]"Mr. McGlinn has not worked since stopping his job at San Jose Friction Materials. He states that in the middle of September, 1974 he was working in his yard operating a power mower. There was *no specific injury*, but he experienced *increased back complaints*.

Against this context, Dr. Ludwig's reference to applicant's having "made a satisfactory recovery by July 1, 1974" (see fn. 4, *ante*), amounts to no more than a statement that he (applicant) had experienced a remission of the constant "back complaints" at that time. The final statement (that his subsequent "disability and necessity for medical care apparently arise out of the activities that he was performing in his yard in September") is actually undisputed. In the context, it may not be read to state that his subsequent disability and need for medical care did *not* "arise" from one or more of the prior industrial injuries. That being the ultimate question, Dr. Ludwig's final statement begs it without answering it. (We are not weighing evidence here; we are citing its absence.)

Respondent Continental Casualty Company, the sole insurance carrier appearing in this court (see fn. 2, *ante*), argues that the September activity *alone* caused applicant's subsequent temporary disability and need for medical treatment. Respondent (1) characterizes the activity as "clearly very strenuous physical work involving lifting, pulling, tugging, bending and stooping," and (2) argues that it added up to "negligence" on applicant's part because it was precluded by the permanent disability ratings he had received from his various industrial injuries.

The characterization is utterly unsupported by the record (see, e.g., fn. 3, *ante*), which does not show that the work at home was the full *intervening* cause for which respondent contends. The argument therefore fails because it speaks to *contributory* cause in terms of fault, which is wholly irrelevant if industrial causation exists. (*State Comp. Ins. Fund v. Ind. Acc. Com.* (1959) 176 Cal.App.2d 10, 17-21 [1 Cal.Rptr. 73]. See *McCarty v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 677, 681 [117 Cal.Rptr. 65, 527 P.2d 617].)

The requisite industrial causation, of applicant's temporary disability and medical needs after September 6, is clearly shown by the reports of Dr. Okumura and Dr. Holmboe (both of whom assign it to his "initial injury"). As we have seen, it is supported in part—and is in no event refuted—by Dr. Ludwig's report. Contrary to the board's interpretation of two of these reports, none of them "ascribed" the post-September 6 complaints to a "non-industrial injury," and no such "injury" appears. Since there is industrial causation, the board improperly denied the claimed benefits by apportioning them to a "non-industrial" cause if one exists. (*Granado v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 405-406 [71 Cal.Rptr. 678, 445 P.2d 294].)

Because of this, he was again . . . [hospitalized] . . . by Dr. Okumura on September 26, 1974." (Italics added.)

Adopting the referee's report, the board discounted the applicability of *Granado* for these reasons: "We fail to see the application of the *Granado* case . . . which deals with the situation where there are several injuries or some pre-existing conditions and *the final precipitating injury is an industrial one.* In this case *the injury precipitating or initiating* the benefits claimed . . . is clearly non-industrial. . . ." (Italics added.)

The statement in the first sentence correctly interprets *Granado* only to the extent that the decision quotes the indicated chronology from Labor Code section 4663. (*Granado* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 399 at p. 401.) The full reach of *Granado* is not limited to cases with that chronology; it stands for the unqualified rule that neither temporary disability nor medical expenses is apportionable between industrial causation and nonindustrial causation if the former exists. (*Id.,* at pp. 402-407; Cal. Workmen's Compensation Practice (Cont.Ed. Bar 1973) §§ 14.16, 14.45.) The board's second statement is therefore irrelevant; as we have seen, its attribution of cause to an "injury" which was "non-industrial" is also refuted by the record in point of fact. *Granado* therefore applies to preclude apportionment as stated above.

The opposing arguments on this review have focused almost exclusively upon the relationship between applicant's post-September 6 complaints and the industrial injury he sustained while working for Senco alone. The cause of this is the failure of the pre-1974 insurance carriers to appear in this court. (See fn. 2, *ante.*) The consequence is that the board must yet determine whether either or both of them share responsibility for the benefits to which applicant is entitled. That determination will be made upon the remand ordered below, and will require that numbers 27062 and 35036 be reopened as applicant initially prayed.

The "Order Denying Reconsideration" is annulled. The cause is remanded to the Workers' Compensation Appeals Board for further proceedings consistent with the views expressed herein.

Caldecott, P. J., and Christian, J., concurred.

The petition of respondent Continental Casualty Company for a hearing by the Supreme Court was denied May 12, 1977. Sullivan, J.,* did not participate therein.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.