[Civ. No. 20904. Third Dist. May 6, 1982.]

SAVAGE PLUMBING COMPANY et al., Petitioners, v. WORKERS' COMPENSATION APPEALS BOARD and GARY GEORGE WROTEN, Respondents.

518

Counsel

Ramsey, Morrison & Keddy and Theodore H. Morrison for Petitioners.

Green & Azevedo and Donald C. Green for Respondents.

Opinion

**SPARKS, J.**—We review a decision of the Workers' Compensation Appeals Board (Board) which, after granting reconsideration at petitioners' request, affirmed the findings, award and order previously made in favor of respondent Wroten. The workers' compensation judge found that a California industrial injury Wroten suffered in October 1976 while employed by petitioner Savage Plumbing Company resulted in a slight depressive neurosis and permanent disability of 25 ½ percent. The judge also held there was a need for further medical treatment as a result of the 1976 injury; that Wroten was entitled to reimbursement for certain treatment expenses; and that there was an unreasonable delay in the payment of those expenses, justifying imposition of a 10 percent penalty.

Petitioners contend (1) there is no evidence to support the finding of permanent psychiatric disability as a result of the 1976 injury; (2) they are not responsible for medical expenses Wroten incurred for his last surgery following a second industrial accident in Pennsylvania or, if they are, the expenses must be apportioned between the two injuries; and (3) there is no basis for imposing a penalty for failure to pay the disputed medical expenses. We annul the award of unapportioned medical treatment and the penalty assessment and affirm the decision of the Board in all other respects.

Facts

Wroten injured his back carrying a water heater up a flight of stairs in late September or early October 1976. At that time he was employed by petitioner Savage Plumbing Company. In January 1977 Wroten moved to Pennsylvania where a laminectomy was performed by Dr. Robert Malin. Dr. Malin reported in June 1977 that Wroten could resume his work as a plumber without limitation as of May 24, 1977. During the period he was not working, Wroten received temporary dis-

ability, payment of medical expenses, and advances on permanent disability from petitioner United States Fidelity and Guaranty Company.

Wroten went to work in May 1977 for a Pennsylvania drain cleaning company. There was not nearly as much heavy work or lifting in this position. He took prescription medication and muscle relaxers for his back. After a dispute with his boss, Wroten quit and did light maintenance work for an apartment complex. Then in December 1977 Wroten sustained another industrial injury when he fell from a ladder while at work. Dr. Malin performed a second laminectomy in January 1978 which was paid for by a Pennsylvania carrier.

Wroten returned to California following his second surgery, undergoing a third laminectomy in January 1979. He had not worked after his second accident. Wroten filed a claim against petitioners and, when the Pennsylvania carrier ceased paying on his third surgery, brought an action before the Pennsylvania Board.[1]

At the California hearing, Wroten testified that after his first injury, he was forced to curtail physical activities such as bowling and golf because of back pain. When Dr. Malin released him to work in May 1977 the doctor advised him to be cautious. Wroten stated that since the third surgery, he had been in almost constant pain, could not engage in physical activities, and was depressed about his condition.

Dr. Richard Canaan reported in April 1979 that Wroten's condition was still improving. He noted "[i]t is hard to determine how much of a permanent disability is a result of the September 1976 injury." The doctor believed Wroten would have "frequent slight pain" but would not need further surgery.

Wroten filed a July 1979 report from Dr. A. Clifton Lamb, a psychiatrist. Dr. Lamb stated Wroten was "only slightly depressed," and that he was handling his situation pretty well. The doctor indicated Wroten might have more difficulties in the future, and recommended "a precautionary award so that psychiatric treatment can be instituted in a timely manner should emotional factors begin to interfere with the rehabilitative process or a major psychological decompensation begin to develop."

---

[1]The status of this action is unknown. Wroten's counsel objected to consolidation of the hearings.

In a supplemental report, Dr. Lamb suggested Wroten's psychiatric condition was the result of accumulated stress. He believed 15 percent of a psychiatric disability could be apportioned to the first accident; 85 percent was attributable to the second accident.

Wroten also submitted an October 1979 report from Dr. Robert M. Murphy. Dr. Murphy observed that Wroten was suffering debilitating pain, and did not believe his condition was permanent and stationary. He stated "[t]here is no doubt that the injury Mr. Wroten sustained to his back in October of 1976 is directly related to his current back symptomatology. However, since he was doing quite well after his initial surgical procedure until the fall off the ladder in December of 1977, some significant apportionment must be given to that second injury."

At Dr. Canaan's deposition, he stated that a portion of Wroten's disability was due to his first injury and surgery. Wroten's back was also predisposed to further injury. Dr. Lamb stated at his deposition that most of Wroten's complaints which were factors in his psychiatric condition came after Wroten's last surgery, and that Wroten's psychiatric condition in itself was not disabling. But he also believed both injuries contributed to Wroten's problems.

Dr. Murphy declared at his deposition Wroten no longer had a normal back after his first injury and surgery, and was predisposed to additional injury. Although the direct cause for Wroten's last two surgeries was his second injury, the doctor believed both injuries contributed to Wroten's condition and need for further medical care.

The judge relied on Drs. Canaan and Lamb's reports in finding a permanent disability due to Wroten's first injury. The judge indicated Wroten's condition was "permanent and stationary" at the time of the second injury. He ruled that both injuries contributed to the need for the second and third surgeries, and that petitioners were liable for medical treatment provided after the second injury. He imposed a penalty on the ground that, since medical treatment is not apportionable, petitioners' refusal to pay remaining medical expenses was unreasonable.

In his report and recommendation on the petition for reconsideration, the judge held Wroten was entitled to full recovery of medical expenses incurred from his last surgery, since the record showed his need for treatment was due in part to his first injury in California. The judge

suggested petitioners might seek contribution from the Pennsylvania carrier.

## DISCUSSION

### I. Sufficiency of Evidence

■ Petitioners contend the evidence does not support the finding of permanent psychiatric disability as a result of Wroten's initial injury in California.[2] We disagree.

Dr. Lamb's October 8, 1979, report suggested the existence of a psychiatric disability, 15 percent of which could be apportioned to Wroten's California injury. In his earlier report, the doctor referred to the difficulties Wroten's back pain was causing with his marriage and recreational activities, and described Wroten as being "slightly depressed." He implied Wroten's psychological state could significantly worsen in the future. At his deposition, Dr. Lamb stated Wroten's condition could be attributed in part to his initial injury; his second injury probably exacerbated an already existing condition.

The judge relied on Dr. Lamb's reports and testimony in finding Wroten had a "slight depressive neurosis," 15 percent of which was caused by his initial injury.[3] We conclude these reports and the accompanying testimony constituted substantial evidence to support this award. It is not within our province to determine credibility, weigh the evidence, or draw inferences different from those drawn by the Board from the evidence. (Lab. Code, § 5952; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637, 639 [83 Cal.Rptr. 208, 463 P.2d 432].)

### II. Apportionment

■ Petitioners contend they are not responsible for medical expenses Wroten incurred for his last surgery following a second industrial acci-

[2]Petitioners do not renew their claim made below that the evidence fails to support the finding Wroten's first injury resulted in a permanent disability to his back. In any event, the record indicates the disability was properly apportioned to the first injury; we will not disturb the Board's finding on this issue.

[3]Petitioners appear to define "disability" in an unduly restrictive way. It does not connote total inability to work. Rather, it is an impairment of earning power caused by a mental or physical condition. The need for continuing treatment is not inconsistent with a permanent disability rating. (Cal. Workmen's Compensation Practice (Cont.Ed. Bar 1973) pp. 533, 556.)

dent in Pennsylvania or, if they are, the expenses must be apportioned between the two injuries.

The judge relied on Drs. Canaan and Murphy, as well as Wroten's testimony, in finding Wroten's California injury contributed to the need for medical treatment following his second injury. The substance of the doctors' reports and testimony was that there was some connection between his first injury and last surgery. For example, Dr. Canaan stated part of Wroten's current condition can be attributed to the surgery following his first injury. Dr. Murphy declared Wroten's first injury was "directly related to his current back symptomatology." He believed both injuries contributed to Wroten's current need for treatment. Wroten testified he restricted his leisure activities, took prescription medication and engaged in less strenuous work after the first injury.

Contrary to petitioners' claim, this record constituted substantial evidence to support the Board's finding that the first injury contributed in some measure to the need for treatment after the second injury. ■ Having made this finding, the Board reasoned that petitioners were liable in full for the costs of that medical treatment, on the ground medical treatment is not apportionable and Wroten should not be left without a remedy or forced to seek recourse in Pennsylvania. In his report and recommendation on the petition for rehearing, the judge noted that "[h]ere, instead of a prior or subsequent nonindustrial injury with respect to which apportionment is disallowed, we have a subsequent industrial injury *over which the California Workers' Compensation Appeals Board has no jurisdiction.*" (Italics in original.) He concluded that "[t]he rules of liberal construction favoring prompt payment to applicant and equitable apportionment of liability among carriers should not be applied blindly to leave the applicant without a remedy in California for the results of his California industrial jury."

We hold the Board erred when it refused to apportion the cost of the last surgery between the two injuries. It should have determined the relative contributions each injury made to Wroten's need for treatment and awarded him only that portion of the cost attributable to the California injury.

Neither *Granado v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399 [71 Cal.Rptr. 678, 445 P.2d 294], nor *Royal Globe Ins. Co. v. In-*

*dustrial Acc. Com.* (1965) 63 Cal.2d 60 [45 Cal.Rptr. 1, 403 P.2d 129], relied upon by the Board and petitioners, require the unapportioned assessment of costs of medical treatment against petitioners. In *Granado*, the court discussed rules of apportionment of temporary and permanent disability between industrial and nonindustrial injuries. It held that, when a subsequent injury "lights up" or aggravates a preexisting nonindustrial condition resulting in permanent disability, liability for the full disability without apportionment is imposed upon the employer. (69 Cal.2d at p. 401.) Temporary disability and medical expenses were also held not apportionable between industrial and nonindustrial injuries. (69 Cal.2d at pp. 402-407; see also *McGlinn v. Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 527, 535 [137 Cal.Rptr. 326].)

*Royal Globe* was a proceeding for contribution between two California carriers. The court held that, as between carriers, apportionment of liability for both temporary and permanent disability in cumulative injury cases is proper. (63 Cal.2d at p. 64.)

In the instant case, Wroten suffered two distinct industrial injuries to his back: the first in California in 1976; the second in Pennsylvania, fourteen months later. The judge recognized the novelty of these facts when he pointed out the Board lacked jurisdiction over the subsequent industrial injury. Nonetheless, he believed petitioners must be responsible for *all* of the remaining medical expenses, in order to ensure full compensation for Wroten.

Labor Code section 3208.2,[4] which was not in effect at the time of *Granado* and *Royal Globe*, requires apportionment here. It provides that "[w]hen disability, need for medical treatment, or death results from the combined effects of two or more injuries, either specific, cumulative, or both, all questions of fact and law shall be separately determined with respect to each such injury, including, but not limited to, the apportionment between such injuries of liability for disability benefits, the cost of medical treatment, and any death benefit." Thus, the Board was required to apportion liability for the cost of treatment between Wroten's injuries.

---

[4]All further references, unless otherwise indicated, are to the Labor Code.

Wroten's reliance upon *Zenith Insurance Co. v. Workers' Comp. Appeals Bd.* (1981) 124 Cal.App.3d 176 [176 Cal.Rptr. 920], is unavailing. There the court held that "[t]he statutory phrase 'apportionment . . . of liability' [contained in Lab. Code, § 3208.2] signifies a division of the loss among successive employers, not between an employee and the employer." (*Id.*, at p. 185.) We agree that the loss here should be divided between Wroten's two employers. The fact that one employer is in Pennsylvania does not change the requirement of apportionment. Wroten voluntarily left the State of California, obtained new employment in Pennsylvania and then sustained another industrial injury there for which he sought and obtained benefits under Pennsylvania law. The Pennsylvania injury cannot fairly be classified as nonindustrial simply because the California Workers' Compensation Appeals Board does not have jurisdiction over the Pennsylvania employer. The *Granado* rule of nonapportionment between industrial and nonindustrial injuries does not therefore apply in the case of two industrial injuries, even though one of those injuries occurs in a foreign jurisdiction.

Here, Wroten suffered separate industrial injuries, resulting in separate disabilities at different times. The judge found Wroten's condition resulting from his first injury was permanent and stationary at the time of the second injury and that, as a result of the Pennsylvania injury, Wroten was "temporarily totally disabled." Medical evidence supports the finding Wroten's condition was not yet permanent and stationary following the second injury and last surgery. Thus, where as here, the employee suffers two distinct industrial injuries, section 3208.2 mandates apportionment between successive employers, wherever located, for the "combined effects" of the injuries. (See *Aetna Cas. & Surety Co. v. Workmen's Comp. Appeals Bd.* (1973) 35 Cal.App.3d 329, 342-343 [110 Cal.Rptr. 780].)

### III.

We agree with petitioners the Board erred when it assessed a 10 percent penalty against them for failure to pay all of Wroten's medical expenses. In light of our discussion, it was not unreasonable for petitioners to refuse payment of expenses connected with Wroten's last surgery. (§ 5814; *Ramirez v. Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 227, 235 [88 Cal.Rptr. 865].)

The award of unapportioned costs for medical treatment and the penalty assessment are annulled, and the case is remanded to the Board

with directions to apportion the costs of medical treatment from the third surgery between both injuries. In all other respects, the decision of the Board is affirmed.

Puglia, P. J., and Evans, J., concurred.

The petition of respondent Wroten for a hearing by the Supreme Court was denied July 14, 1982. Bird, C. J., was of the opinion that the petition should be granted.