[Civ. No. 51392. Second Dist., Div. Five. Mar. 21, 1978.]

LESTER DORMAN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
I.T.E. IMPERIAL et al., Respondents.

COUNSEL

Ghitterman, Schweitzer & Herreras and William A. Herreras for Petitioner.

Clopton, Penny & Keeney, Frank J. Keeney, Duenow, Burke & Smith and J. M. Dorrance for Respondents.

OPINION

KAUS, P. J.—Petitioner Lester Dorman (Dorman) asserts that the appeals board erred in apportioning away 50 percent of his psychiatric disability as not being the result of his industrial injuries and in failing to assess a penalty of 10 percent pursuant to Labor Code section 5814 for failure to provide medical treatment. These contentions have merit.

*Relevant Facts:*

Dorman suffered four industrial injuries while he was employed by I.T.E. Imperial. All resulted in compensable psychiatric and back disability.

Dorman's first injury occurred on May 28, 1971, the second on May 7, 1973, and the third on January 27, 1975. The fourth injury was a cumulative trauma injury for the period 1968 through July 2, 1975. During the period March 1, 1971, to January 1, 1974, I.T.E. was insured by respondent Hartford Accident & Indemnity Company (Hartford). I.T.E. was permissibly self-insured during the period January 1, 1974, through July 2, 1975. I.T.E.'s pre-Hartford carriers are not directly participating in this matter at the present stage of the proceedings, as Dorman elected to proceed before the appeals board against I.T.E. and Hartford only. (See *Colonial Ins. Co.* v. *Industrial Acc. Com.* (1946) 29 Cal.2d 79, 82-83 [172 P.2d 884].)

The first indication of Dorman having any psychiatric problems after any of the injuries is indicated by Dr. McAdams' report of June 18, 1973. Apparently, Dorman chose Dr. McAdams as a consultant to provide an evaluation as to his then current disability status. (See Lab. Code, § 4600.) Dr. McAdams felt that Dorman had an emotional problem manifested by a crying episode and that he should be evaluated by a

psychiatrist. At Dr. McAdams' suggestion, Dorman was then referred to Dr. Brichta, a psychiatrist. Dr. Brichta examined Dorman on August 1, 1973.

Dr. Brichta took a history of a repressive childhood, an unsettling early adulthood, and marital problems. In Dr. Brichta's view, Dorman's 1973 industrial injury "helped to focus his pent up frustration as well as his hopes." Dr. Brichta's diagnostic impression was: "Compensation neurosis as manifested by exaggerated concern with bodily disfunctions, by a discrepancy between physical findings and subjective complaints. Precipitating stress mild—with sprain of paravertebral muscles. Predisposition severe with life long frustration and set backs. Impairment moderate as Mr. Dorman sees no way out of his predicament except by pursuing the course through repeated doctors' offices to prove his point and justify his claim."[1] Nevertheless, Dr. Brichta did not feel psychotherapy had much to offer Dorman.

Apparently because of a dispute between Hartford and Dorman as to the continuing need for treatment, Dorman sought medical treatment from Dr. Gregg. Since Dorman had become seriously depressed in February 1974, Dr. Gregg referred Dorman to Robert L. Brigden, Ph.D., a clinical psychologist. Dr. Brigden examined Dorman on February 27, 1974. His analysis was that it was emotionally important for Dorman to work, since through work Dorman "gained a feeling of worth which helped compensate for his feelings of smallness and inferiority." Dr. Brigden did not indicate whether or not any psychotherapy was indicated.

On July 30, 1974, the appeals board issued an award regarding Dorman's 1973 injury. Contained in the award was a finding that Dorman was in need of further medical treatment to cure or relieve from the effects of the injury; Hartford was ordered to provide such treatment. No award of permanent disability was made at that time.

Sometime in 1974, Dorman returned to work for I.T.E. only to reinjure his back on January 27, 1975. Dr. Rivers began treating Dorman soon after the injury. According to Dorman, Dr. Rivers was authorized to treat for the 1975 injury by I.T.E., by then permissibly self-insured.

---

[1]A "compensation neurosis" is "the psychoneurotic phenomena developing after an accident in persons who are insured or who believe that by being ill they may increase their chances of receiving compensation." (Dorland's Illustrated Medical Dict. (1965) p. 1008.)

Since, in February 1975, Dr. Rivers found Dorman profoundly depressed and felt that he was faced with an emergency situation, he referred him to Dr. Lubin, a psychiatrist. From his original visit on February 19, 1976, until January 26, 1977, Dorman was treated by Dr. Lubin on 17 separate occasions. Dorman testified that "the insurance company"[2] refused to pay for medication prescribed by Dr. Lubin. As of January 1977, Dr. Lubin's bill had not been paid by either I.T.E. or Hartford.

In July 1975, Dorman underwent a laminectomy which was performed by Dr. Rivers.

New counsel referred Dorman to Dr. Lunsky, a psychiatrist, for evaluation. Dr. Lunsky examined Dorman on November 26, 1975. His diagnosis was "[m]ixed neurosis, anxiety depressive types." In his report, Dr. Lunsky relates the psychiatric disability to Dorman's back pain which "caused severe personality regression associated with pervasive anxiety depression." He considered Dorman temporarily totally disabled and in need of psychotherapy and pharmacotherapy. The report was served on I.T.E. and Hartford on December 11, 1975.

Dr. Lunsky reexamined Dorman on May 5, 1976, and issued a report of the same date. He found Dorman to be permanent and stationary with a moderate to severe psychiatric disability and in need of supportive psychotherapy and pharmacotherapy. He further stated: "This patient is an upward-striving man who in spite of his early deprivation in childhood managed to achieve a modicum of success which was all demolished by a series of work injuries in which he sustained continuous trauma to his back areas. In spite of the surgery he continues to be very limited and restricted by his pain, anxiety, and depression."[3] In a report of August 17, 1976, Dr. Lubin stated that in his opinion Dorman's psychiatric disability was pronounced and apportioned all the disability between the various industrial injuries.

Eventually, on September 24, 1976, Hartford arranged to have Dorman evaluated by Dr. Mannard, a psychiatrist. Dr. Mannard

---

[2]It is not clear if Dorman was referring to Hartford or to I.T.E.

[3]Apportionment as opined by Dr. Lunsky was contained in his report of July 5, 1976, but this report was never admitted into evidence. Although the parties have stipulated that this report may nevertheless be considered by us, it does not affect our decision one way or another. The report is no more helpful than any of the others discussed below.

reported: "There is good evidence that [Dorman's psychiatric problems have] been an ongoing process since at least 1966." He diagnosed a "hysterical personality" and also agreed with Dr. Brichta that Dorman's back difficulties culminated in a compensation neurosis. Dorman's psychiatric disability, in Dr. Mannard's view, was moderate. As to apportionment, Dr. Mannard stated: "I think that Mr. Dorman's personal life has significantly increased his vulnerability to psychiatric decompensation. His loss of his wife through adultery and divorce and of his two children must be considered a significant loss for him. I feel that this would intensify his need to focus on various functional somatic complaints and increase his feelings of anger and helplessness. I feel that 50% of his moderate disability could be apportioned to the cumulative effects of his industrial injuries. Because of Mr. Dorman's need to somatisize and exaggerate aches and pains it is not clear to me whether there was any pre-existing back injury prior to 1968. Clearly Mr. Dorman's psychological problems have existed prior to that time."

As to further psychiatric treatment, Dr. Mannard felt that while it was clear Dorman needed psychiatric treatment it was not thought Dorman would respond to psychotherapy.

The workers' compensation judge, relying on Dr. Mannard, apportioned 50 percent of Dorman's psychiatric disability as nonindustrial. The appeals board denied reconsideration.

## DISCUSSION

Apportionment of disability can be pursuant either to Labor Code section 4663 or section 4750.

Section 4663 of the Labor Code provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

█ "It is settled that [section 4663] must be read in the light of the rule that an employer takes the employee as he finds him at the time of the employment. Accordingly, when a subsequent injury lights up or aggravates a previously existing condition resulting in disability, liability

for the full disability without proration is imposed upon the employer, and the appeals board may apportion the disability under the section 'only in those cases in which part of the disability would have resulted, in the absence of the industrial injury, from the "normal progress" ' of the preexisting disease. (E.g., *Smith* v. *Workmen's Comp. App. Bd.,* 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]; *Granado* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 399, 401 [71 Cal.Rptr. 678, 445 P.2d 294]; *Zemke* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 794, 796 [69 Cal.Rptr. 88, 441 P.2d 928]; *Berry* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 786, 789 et seq. [69 Cal.Rptr. 68, 441 P.2d 908]; *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.,* 65 Cal.2d 438, 442-443 [55 Cal.Rptr. 254, 421 P.2d 102]; *Colonial Ins. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 79, 83-86 [172 P.2d 884]; *Tanenbaum* v. *Industrial Acc. Com.,* 4 Cal.2d 615, 617-618 [52 P.2d 215].)" (*Ballard* v. *Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937].)

Labor Code section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the latter injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

Section 4750 "has been interpreted to mean that, 'An employer [or his insurer] of a workman who has a permanent physical impairment and who thereafter sustains a compensable injury resulting in permanent disability, is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last injury.' (*Smith* v. *Industrial Acc. Com.,* 44 Cal.2d 364, 365 [282 P.2d 64]. See also *Edson* v. *Industrial Acc. Com.,* 206 Cal. 134, 138-139 [273 P. 572].) The purpose of this statutory provision is to encourage the employment of physically disabled persons by assuring an employer that he will not be liable for the total combined disability present after an industrial injury but only for that portion which is attributable to the subsequent injury. (See 2 Larson, Workmen's Compensation Law (1961) pp. 54-61; Comment (1956) 44 Cal.L.Rev. 548.)" (*State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)* (1963) 59 Cal.2d 45, 48-49 [27 Cal.Rptr. 702, 377 P.2d 902].)

■ However, as with section 4663, under section 4750 the employer is liable to the extent the industrial injury accelerates, aggravates or "lights up" the preexisting disability or impairment. (*Bstandig* v. *Workmen's Comp. Appeals Bd.* (1977) 68 Cal.App.3d 988, 997 [137 Cal.Rptr. 713].)

Thus, if absent the industrial "aggravation" there would be no disability, there can be no apportionment.

■ In deciding the issue of apportionment, the board obviously relied on expert psychiatric opinion. However, opinion which does not rest on relevant facts or which assumes an incorrect legal theory cannot constitute substantial evidence on which the appeals board may base a finding of apportionment. (*Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 798 [69 Cal.Rptr. 88, 441 P.2d 928]; *Berry* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 786, 791 [69 Cal.Rptr. 68, 441 P.2d 908]; *Amico* v. *Workmen's Comp. Appeals Bd.* (1974) 43 Cal.App.3d 592, 604-605 [117 Cal.Rptr. 831].) Accordingly, in order for the appeals board to rely on a medical opinion as to apportionment, the physician must disclose adequate familiarity with the preexisting disability (Lab. Code, § 4750) or with the relationship between the present disability and the "normal progress" of the preexisting condition (Lab. Code, § 4663.) (See *Zemke* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 794, 798-799.)[4]

Judged by these standards, Dr. Mannard's report is inadequate to support the finding on apportionment. Nowhere does he advert to the proper standard under sections 4663 or 4750. To the contrary, while he indicates that Dorman's problems preexisted the industrial injury, the key to his apportionment is the statement that Dorman's "personal life has significantly increased his *vulnerability* to psychiatric decompensation." (Italics added.) Thus, Dr. Mannard is seen to be improperly apportioning to mere pathology rather than disability. (See *Bstandig* v. *Workers' Comp. Appeals Bd., supra,* 68 Cal.App.3d 988, 997-998.)

---

[4]Section 10606 of the Workers' Compensation Appeals Board Rules of Practice and Procedure (Cal. Admin. Code, tit. 8, ch. 4.5, § 10606) provides that medical reports "should" include both the "cause of the disability" and "the reasons for opinions." Section 10606 thereby indicates that, in appropriate cases, physicians should not only express their opinions on apportionment but explain the bases for such opinions. While section 10606 is directory rather than mandatory (*Lumberman's Mut. Cas. Co.* v. *Ind. Acc. Com.* (1946) 29 Cal.2d 492, 500 [175 P.2d 823]), we observe that reconsideration by the Board and this writ of review might have been unnecessary as far as the apportionment question is concerned, if the judge presiding at the hearing level had insisted on compliance with section 10606.

Dorman argues that the record is clear that no apportionment is indicated, citing the medical reports of Dr. Lunsky and Dr. Lubin. Unfortunately, his own evidence is just as infirm as Dr. Mannard's. Dr. Lunsky does not directly discuss the issues under sections 4663 and 4750 in any of his reports. While in his report of August 17, 1976, Dr. Lubin does properly discuss apportionment among the industrial injuries, he also fails to discuss fully the issue of apportionment to nonindustrial disability. The omission of such discussion renders the report defective. (Cf. *State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd. (Gaba)* 72 Cal.App.3d 13, 17, fn. 2 [139 Cal.Rptr. 802].)

While we find the present apportionment invalid, it is impossible, on the present record, to determine what, if any, apportionment is indicated. Accordingly, on remand, the appeals board will need to take further evidence on the issue.

*Penalty*:

Dorman contends the appeals board erred in failing to assess a 10 percent penalty on I.T.E. and Hartford, pursuant to Labor Code section 5814,[5] for their unreasonable refusal to pay for or provide psychiatric treatment. The workers' compensation judge refused to apply a penalty. In his report on petition for reconsideration, he stated that some of the treatment by Dr. Lubin was needed because of domestic problems and "[i]n any event, it was the conclusion of the judge there was reasonable doubt as to liability for such psychiatric treatment on an industrial basis."

■ "[T]he only satisfactory excuse for delay in payment of disability benefits, whether prior to or subsequent to an award, is genuine doubt from a medical or legal standpoint as to liability for benefits. . . [T]he burden is on the employer or his carrier to present substantial evidence on which a finding of such doubt may be based." (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 230 [93 Cal.Rptr. 192, 481 P.2d 200].) "The language of [Labor Code section 5814] makes it abundantly

---

[5]Labor Code section 5814: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

clear that an employer or carrier has no absolute right to delay the provision of benefits until a formal hearing." (*Id.,* at p. 227.) "Upon notice or knowledge of a claimed industrial injury, an employer has both the right and the duty to investigate the facts in order to determine his liability for workmen's compensation, but he must act with expedition in order to comply with the statutory provisions for the payment of compensation which require that he take the initiative in providing benefits." (*Ramirez* v. *Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 227, 234 [88 Cal.Rptr. 865].)

■ I.T.E. and Hartford claim that substantial medical evidence justified their refusal to provide or pay for psychiatric treatment. I.T.E. and Hartford rely on the opinions of Dr. Brichta and Dr. Mannard. Neither of these doctors, in fact, supports I.T.E.'s and Hartford's position.

While Dr. Brichta's 1973 report would defeat a claim of penalty as to the refusal of psychiatric treatment up until Dr. Rivers and Dr. Lubin recommended such treatment in early 1975, Dr. Brichta's evaluation is no defense after these recommendations. It is hard to conceive how Dr. Brichta's 1973 evaluation is germane to Dorman's emotional state in 1975, when after that evaluation, he returned to work in 1974, was under stress, sustained a specific industrial back injury on January 27, 1975, and underwent back surgery in July 1975.

Hartford and I.T.E. also assert that Dr. Mannard's evaluation supports their refusal of psychiatric treatment, since—though Dr. Mannard finds the psychiatric condition industrially related—he also stated it was doubtful Dorman would respond to psychiatric treatment. Dr. Mannard's examination was on September 24, 1976, which was approximately 17 months after Dr. Rivers noted Dorman needed psychiatric care on an *emergency* basis. Dr. Mannard's examination was only *after* Dorman had been declared permanent and stationary on a psychiatric basis by both Dr. Lunsky and Dr. Lubin. Dr. Mannard's report only justifies refusal of psychiatric treatment from the date of his examination, not before. Had Dr. Mannard's evaluation been obtained expeditiously after Dr. Rivers first recommended psychiatric treatment, no penalty would be warranted, but that is not what happened. It was over nine months from the December 11, 1975, service of Dr. Lunsky's first report on Hartford and I.T.E., before Dr. Mannard's evaluation was obtained. No reason for this delay has been shown.

■

■ Although denominated a "penalty," Labor Code section 5814 is to be interpreted liberally, in accordance with the general purpose of the workers' compensation laws of affording benefits for the protection of injured employees. (*Adams* v. *Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226, 229 [133 Cal.Rptr. 517, 555 P.2d 303]; *Kerley* v. *Workmen's Comp. Appeals Bd., supra,* 4 Cal.3d 223, 227.) The penalty for unreasonable delay in payment of compensation is designed to help an employee obtain promptly the cure or relief to which he is entitled, and to compel his employer to provide this cure or relief in a *timely* fashion. (*Adams* v. *Workers' Comp. Appeals Bd., supra,* 18 Cal.3d 226, 229; *Ramirez* v. *Workmen's Comp. App. Bd., supra,* 10 Cal.App.3d 227, 234; *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15, 18 [50 Cal.Rptr. 76].)

■ Nor is it a defense that, as the judge stated, a "significant portion" of Dorman's treatment was needed because of domestic problems. "There can be no doubt that medical expense is not apportionable. . . . [*T*]*reatment for nonindustrial conditions may be required of the employer where it becomes essential in curing or relieving from the effects of the industrial injury itself.* (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra,* § 16.03 [1], [2].)" (Italics added.) (*Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 405-406 [71 Cal.Rptr. 678, 445 P.2d 294]; see also *McGlinn* v. *Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 527, 535 [137 Cal.Rptr. 326].)

Hartford further contends that it was not responsible for providing psychiatric treatment since it did not furnish coverage after January 1, 1974, and a request for psychiatric treatment was made to I.T.E., in its self-insured capacity, and not to Hartford. ■ Hartford's first point is not well taken; the fact that Hartford's coverage of the employer ended January 1, 1974, does not absolve it from liability for benefits regarding injuries occurring during its period of coverage. As to Hartford's second point, we note that when Dorman served Dr. Lunsky's report of November 26, 1975, on both Hartford and I.T.E., the transmittal letter demanded payment of Dr. Lubin's bill. This demand was addressed to both Hartford and I.T.E. There is no indication that Hartford complied. Also, Dr. Lunsky's report of November 26, 1975, clearly connects Dorman's need for psychiatric treatment to the 1973 injury.

Therefore, a penalty should have been assessed against Hartford and I.T.E. for delay in providing of psychiatric treatment.

Accordingly, the award is annulled and the matter is remanded to the appeals board for such further proceedings as are consistent with this opinion.

Stephens, J., and Hastings, J., concurred.