[Civ. No. 20128. Fourth Dist., Div. Two. Nov. 27, 1978.]

JOHN H. DUTHIE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
McDONNELL DOUGLAS COMPANY et al., Respondents.

722

## COUNSEL

Byhower & Petherbridge and Nicholas C. Byhower for Petitioner.

Mouser, Channels & Roberts, Susan L. England and F. Whitfield. Giddens for Respondents.

## OPINION

**TAMURA, Acting P. J.**—Petitioner filed a workers' compensation claim for a heart disability suffered while in the employment of McDonnell Douglas Company. A workers' compensation judge found that petitioner was permanently disabled and apportioned 25 percent of his disability to his work resulting in a permanent disability rating of 18 percent. On reconsideration, the Workers' Compensation Appeals Board determined that petitioner was totally and permanently disabled, apportioning 5 percent of his disability to his work. Petitioner seeks review and annulment of the board's decision on the ground its apportionment finding is not supported by substantial evidence.

When his disability arose in February 1974, petitioner was 62 years old. He had been employed as an administrator by McDonnell Douglas for nine years, and had just received a notice of imminent layoff.[1] During his years of employment, petitioner had worked on parts procurement for numerous aerospace projects. He had been subjected to the stress of tight deadlines, interspersed with the threat of layoff during slack periods, and had experienced problems in getting along with difficult coworkers. Petitioner had been under treatment for hypertension since 1969, and manifested congestive heart failure at the time of a renal cancer operation

---

[1]Prior to the nine-year span of present employment with McDonnell Douglas, petitioner had worked for McDonnell Douglas' predecessor Douglas Aircraft from 1962 to 1963, when he was laid off because of cancellation of a missile project.

in 1971. After recovery from surgery, petitioner returned full time to his regular administrative duties until his layoff in 1974. Since the heart incident which occurred at that time, he has been unable to work, and requires continuous medical care.

The medical evidence in petitioner's case consists of the reports, testimony, and records of eight physicians and two hospitals. Most pertinent to this inquiry are the statements of four physicians: Petitioner's personal physician, Dr. John R. Kern; petitioner's examining physician, Dr. Edward R. Dickstein; Dr. Kenneth M. Smith, respondent Industrial Indemnity Company's examining physician; and Dr. Edward Phillips, an independent medical examiner.[2]

Dr. Kern, who became petitioner's physician sometime after his illness and recovery in 1971-1972, reported that petitioner suffered a myocardial infarct on February 16, 1974, while under his care.[3] When queried, he stated that he did not know whether work stresses caused petitioner's heart disability, though he believed that current medical opinion ruled out job stress as a cause of such injuries.

Dr. Dickstein found that petitioner suffered from cardiomegaly brought on by hypertension and hypertensive cardiovascular disease. His opinion was that petitioner's condition stemmed from aggravation of his hypertension by the stress and harassment of his job.

Dr. Smith found no evidence that petitioner had ever experienced an acute myocardial infarct. He stated that petitioner suffered from hypertension and arteriosclerotic heart disease, neither caused nor aggravated by his employment. However, Dr. Smith did find that petitioner had suffered anginal symptoms due in part to the stress of his separation from employment in February of 1974.

Because of the voluminous conflicting medical evidence in this case, the Workers' Compensation Appeals Board granted a petition for reconsideration and referred petitioner to an independent medical examiner. Dr. Phillips, the independent medical examiner, found that petitioner had experienced severe chest pain for the first time on

---

[2]Also included in the record are petitioner's hospital records for the periods during and after his renal cancer operation in 1971, reports of three psychiatrists who examined petitioner during the adjudication of this case, and a report from petitioner's current personal physician.

[3]Dr. Kern also reported that petitioner had suffered a previous myocardial infarct in 1971. However, this is not borne out by petitioner's hospital records during that period, which show only congestive heart failure and a heart situation otherwise "unremarkable."

February 16, 1974. He characterized this pain as coronary heart disease resulting from aggravated hypertension and explained that Mr. Duthie's hypertension was of a type resulting from stress rather than kidney disease. Dr. Phillips stated that the heart disease became symptomatic and distinguished itself from the hypertension for the first time because of the severe stress petitioner underwent on learning he would be laid off. His analysis of petitioner's hospital records at the time of the cancer surgery revealed no evidence of coronary disease. The doctor also attributed the aggravation of petitioner's hypertension and the acceleration of his coronary disease, leading to his disability, to work exposure: "It is my opinion that Mr. Duthie's work exposure . . . did aggravate his hypertensive disease, and we know that this hypertension, under the best circumstances, is the greatest risk factor in the development of symptomatic coronary disease, and that it is the symptomatic coronary disease which led to Mr. Duthie's disability."

In his report, Dr. Phillips expressed his opinion that petitioner was peculiarly susceptible to mental stress. He stated that petitioner assumed sole responsibility for the success of whatever enterprise he might be engaged upon, and that petitioner should not and could not cope with emotional pressure. Nevertheless, the doctor found that petitioner's sickness was aggravated by his work to only a small degree, and recommended that just 5 percent of his disability be apportioned to his employment. He attributed the rest of the disability to "other stresses and strains of living, including the cancer of the kidney." However, when deposed on this point, the doctor acknowledged that determining the degree of illness generated by each of the stress factors in claimant's life was "pure guess work as far as medicine is concerned." Finally, Dr. Phillips opined that petitioner's disease was of a progressive nature which would ultimately have become symptomatic even without the pressures of petitioner's work. On the basis of this report, the board held that petitioner was permanently disabled and apportioned 5 percent of the disability to the heart injury which petitioner sustained through his work.

Petitioner contends that the apportionment ordered by the board was not supported by substantial medical evidence. We agree and have concluded that the decision must be annulled and the case remanded to the board for further proceedings in accordance with the views set out below.

### DISCUSSION

Labor Code section 4663 governs apportionment of disability resulting from aggravation of a prior disease. It provides: "In case of aggravation

of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury." This statute has been a part of California's workers' compensation law in substantially its present form since 1917. (Stats. 1917, ch. 586, § 3, subd. (4), p. 833.) It received its definitive interpretation in 1935 (*Tanenbaum* v. *Industrial Acc. Com.,* 4 Cal.2d 615 [52 P.2d 215]), but has been a frequent subject of appellate litigation since that time (e.g., *Colonial Ins. Co.* v. *Industrial Acc. Com.* (1946) 29 Cal.2d 79 [172 P.2d 884]; *Industrial Indem. Co.* v. *Ind. Acc. Com.* (1949) 95 Cal.App.2d 443 [213 P.2d 11]; *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 438 [55 Cal.Rptr. 254, 421 P.2d 102]; *Berry* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 786 [69 Cal.Rptr. 68, 441 P.2d 908]; *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794 [69 Cal.Rptr. 88, 441 P.2d 928]; *Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274 [113 Cal.Rptr. 162, 520 P.2d 978]; *Amico* v. *Workmen's Comp. Appeals Bd.* (1974) 43 Cal.App.3d 592 [117 Cal.Rptr. 831]; *Franklin* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224 [145 Cal.Rptr. 22]; *Hart* v. *Workers' Comp. Appeals Bd.* (1978) 82 Cal.App.3d 619 [147 Cal.Rptr. 384]). Numerous commentators on California and American law have also written explanations of this apportionment statute based on their interpretations of case law concerning section 4663. (Comment, *Injury to the Deceased or Disabled Employee Under the California Workmen's Compensation Laws* (1956) 44 Cal.L.Rev. 548; Hanna, *Apportionment of Permanent Disability: A Review of Recent California Court Opinions* (1970) 21 Hastings L.J. 623; 2 Witkin, Summary of Cal. Law (8th ed.) §§ 180-181, pp. 1000-1002; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 14.04[2][f]; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed.) § 7.45, pp. 262-263; Swezey, Cal. Workmen's Compensation Practice (1973) §§ 14.23-14.24; 2 Larson, Workmen's Compensation Law, § 59.20.) Despite this wealth of adjudication and commentary, section 4663 continues to generate confusion among claimants, defendants, medical experts and those who must rule on the merits of apportionment claims.

■ Initially, section 4663 must be read in light of the settled principle that the employer must take the employee as he finds him at the time of employment. Thus, an employee may not be denied compensation merely because his physical condition was such that he sustained a disability which a person of stronger constitution or in better health would not have suffered. (E.g., *Ballard* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937]; *Granado* v. *Workmen's*

*Comp. App. Bd.,* 69 Cal.2d 399, 401 [71 Cal.Rptr. 678, 445 P.2d 294]; *Zemke* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 794, 796; *Colonial Ins. Co.* v. *Industrial Acc. Com., supra,* 29 Cal.2d 79, 83-84; *Tanenbaum* v. *Industrial Acc. Com., supra,* 4 Cal.2d 615, 617-618.)

█ Further, it is firmly established that section 4663 mandates the apportionment of the employee's *disability,* not apportionment among the *causes* of his disability. This principle requires that apportionment be applied only in those situations in which the worker's disability would have occurred even without the industrial aggravation, as part of the normal progress of his preexisting disease. (E.g., *Ballard* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 832, 837; *Granado* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 399, 401; *Zemke* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 794, 796; *Berry* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 786, 789; *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd., supra,* 65 Cal.2d 438, 442-443.) The preexisting disease need not be symptomatic and disabling at time of industrial injury, so long as it has manifested itself by the time claimant's permanent disability has reached a stationary ratable stage;[4] however, a projection that, but for the industrial aggravation disability would have occurred anyway at "some indefinite future time," is not enough to support the apportionment of a disability. (*Franklin* v. *Workers' Comp. Appeals Bd., supra,* 79 Cal.App.3d 224, 243, fn. 6; *Gross* v. *Workmen's Comp. Appeals Bd.,* 44 Cal.App.3d 397, 403 [118 Cal.Rptr. 609].)[5] This mandate has been a constant source of confusion in applying section 4663. Physicians, pursuing the science of etiology, are trained to look for all the causes of a given disease or

---

[4] The section 4663 rule of apportionment applies only to permanent disability (*McGlinn* v. *Workers' Comp. Appeals Bd.,* 68 Cal.App.3d 527, 535 [137 Cal.Rptr. 326]; *Daniel Orifice Fitting Co.* v. *Industrial Acc. Comm.,* 13 Cal.Comp. Cases 49, 50). "A disability is considered permanent after the employee has reached maximum improvement or his condition has been stationary for a reasonable period of time, as may be determined by the Board or a referee. WCAB Rules § 10900." (Swezey, Cal. Workmen's Compensation Practice 1973, § 14.18.) Thus, apportionment based on the normal progression of a previously existing disease is measured at the time of rating for permanent disability. (See, e.g., *Sweeney* v. *Industrial Acc. Com.,* 107 Cal.App.2d 155 [236 P.2d 651]; *Dahlbeck* v. *Industrial Acc. Com.,* 135 Cal.App.2d 394 [287 P.2d 353]; Comment, *Injury to the Deceased or Disabled Employee Under the California Workmen's Compensation Laws, supra,* 44 Cal.L.Rev. 548, 554; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra,* § 14.04[2][f].)

[5] In *Franklin,* the court discusses at length the distinctions between disability and causation, and their relation to the normal progress of the preexisting disease. It states that the identified cause of a disability " 'cannot be made to yield to purely hypothetical ones,' " and holds that a statement that petitioner would have suffered an infarct within three years even without industrial stress "is irrelevant to the extent that the present disability is, in fact, due to the industrial injury." (*Franklin* v. *Workers' Comp. Appeals Bd., supra,* 79 Cal.App.3d 224, 243.)

condition. They are concerned with preventing or curing illnesses and so must address all these causes in their work. Section 4663 requires, however, that the doctor focus on the existence of the present disability and on whether it would have appeared in any form in the absence of industrial injury.

This tenet of apportionment was fully explored in two recent cases, *Franklin* v. *Workers' Comp. Appeals Bd., supra,* 79 Cal.App.3d 224, and *Hart* v. *Workers' Comp. Appeals Bd., supra,* 82 Cal.App.3d 619. In *Franklin,* a nurse who had a history of high cholesterol and coronary arteriosclerosis sustained a myocardial infarct while working under much pressure in a busy hospital. The reviewing court noted that there were two "components" of the nurse's present disability: The first being the disability related to the infarct and the second the disability relating to the underlying heart disease. With respect to the disability stemming from the myocardial infarct, there being no showing the infarct would have occurred when it did absent the industrial aggravation, the court held that apportionment of the disability to the underlying cardiovascular disease was inappropriate. It annulled the apportionment decision and remanded the case with a detailed procedure to be followed in apportioning petitioner's disability under Labor Code section 4663. (*Franklin* v. *Workers' Comp. Appeals Bd., supra,* 79 Cal.App.3d at pp. 248-250.)

Similarly, in *Hart,* this court held that it was improper to apportion disability suffered by a deputy sheriff resulting from a cerebrovascular accident brought on by work pressures. (*Hart* v. *Workers' Comp. Appeals Bd., supra,* 82 Cal.App.3d at p. 627.) In *Hart,* the agreed medical examiner was of the opinion that 60 percent of the stroke victim's disability should be apportioned to his underlying heart disease and 40 percent to industrial causes. Since the entire disability resulted from the cerebrovascular accident and there was no showing of when or if the stroke would have occurred in the absence of job stresses, we held that the medical opinion was based on an erroneous legal theory and could not serve as an evidentiary basis for apportionment. (*Hart* v. *Workers' Comp. Appeals Bd., supra,* 82 Cal.App.3d at p. 628.)

In both *Franklin* and *Hart,* the medical experts on whom the board relied confused the concepts of *cause* and *disability.* They overlooked the fact that petitioners' *present disabilities* resulted, not from their underlying chronic diseases, but from specific heart and cerebrovascular incidents precipitated by work stress. In so doing, the experts ignored the principle that the employer takes the employee as he finds him at time of

employment, and applied an erroneous legal theory of causation to arrive at recommendations of apportionment. This mistake was elucidated by two important Supreme Court cases in 1968, *Berry* v. *Workmen's Comp. App. Bd.,* *supra,* 68 Cal.2d 786, and *Zemke* v. *Workmen's Comp. App. Bd.,* *supra,* .68 Cal.2d 794.[6] In *Zemke,* the court held that a 50 percent apportionment of claimant's disability to a previously asymptomatic arthritic condition was based on an error of law. It stated that in resolving the issue of apportionment, the board must rely on expert medical opinion. An expert's opinion, however, which does not rest upon relevant facts or which assumes an incorrect legal theory cannot constitute substantial evidence upon which the board may base an apportionment finding. (*Zemke* v. *Workmen's Comp. App. Bd.,* *supra,* 68 Cal.2d at p. 798.)

*Berry* and *Zemke* also set out other standards for evaluating whether medical testimony on apportionment constitutes substantial evidence. In *Berry,* the court cautioned that an apportionment cannot be based merely on what the medical expert feels is "fair," or on his "offhand feeling" that apportionment is called for in a given situation (68 Cal.2d at p. 791). The court elaborated on this in *Zemke,* stating that an expert opinion which is an "educated guess" or "speculation" poses a "mere legal conclusion," which cannot serve as competent evidence on the issue of apportionment.

---

[6]In the wake of these decisions, a commentator on California workers' compensation law formulated a succinct review of the rules of apportionment established by *Zemke, Berry,* and companion cases.

"(1) The acceleration, aggravation, or 'lighting up' of a preexisting, nondisabling condition is an injury in the employment causing it.

"(2) If the resultant permanent disability is entirely due to the industrial injury, the employer is fully liable and there can be no apportionment.

"(3) Whether a disability results in whole or in part from the normal progress of a preexisting disease or represents a fully compensable lighting up or aggravation of a preexisting condition is a factual question for the appeals board to determine, and its award will not be annulled if there is any substantial evidence to support it.

"(4) The supporting evidence, to be substantial, must be medical opinion based upon relevant facts and correct legal theory; apportionments not based upon such evidence are subject to annulment. The recent opinions have made it clear that medical evidence will not be deemed substantial when:

"(a) It merely states a legal conclusion, i.e., offers the doctor's statement, without disclosure of its underlying basis, that it would be fair to charge a specified percentage of the patient's over-all disability to preexisting factors and the balance to the industrial injury.

"(b) It provides no indication of how much of the disability has been due to underlying pathology and its natural progress apart from work aggravation, i.e., how much of such disability would be present even though the industrial injury had not occurred.

"(c) It is predicated upon the fact or belief that the underlying preexisting condition hindered recovery from the industrial injury, or that the disability was greater than that which would have resulted if the employee had had a stronger or healthier constitution." (Hanna, *Apportionment of Permanent Disability: A Review of Recent California Court Opinions* (1970) 21 Hastings L.J. 623, 627-628.)

It stressed that a medical opinion should "disclose its underlying basis" for recommending apportionment of a disability. (68 Cal.2d at pp. 798-799.)

In the present case, Dr. Phillips, the independent medical examiner, made the same fundamental mistake concerning cause and disability as that represented by *Franklin* and *Hart.* He stated that petitioner experienced the symptomatic coronary disease which makes up his present disability because of the stress of his layoff, thus identifying petitioner's present disability as work-induced. However, the doctor then went on to say that petitioner's sickness was aggravated by his work to only a small degree, that most of it was attributable to other life stresses. With this statement, the physician made the error of recommending apportionment because of the multiple causes of petitioner's general ill-health, rather than ·focusing on the present disability for which compensation was sought. Dr. Phillips' opinion, based on an erroneous legal theory, cannot serve as substantial evidence on which to base an apportionment finding.

Other parts of Dr. Phillips' testimony also fail to meet the tests for substantiality established by *Berry, Zemke* and similar cases. The doctor stated that his recommendation on percentage of apportionment was based on "pure guess work." Thus, he failed to provide the underlying medical basis for his conclusion that only 5 percent of petitioner's disability should be apportioned to his work, relying instead on mere speculation. The doctor's testimony that petitioner would ultimately have manifested symptomatic coronary disease even without work stress is also too speculative and conclusory to constitute sufficient evidence that petitioner's present disability is due in part to the normal progress of preexisting disease.

We conclude that there was no substantial evidence in the record to support the apportionment ordered by the board. The decision is, therefore, annulled and the matter is remanded to the board for further proceedings consistent with the guidelines for proper apportionment under Labor Code section 4663 set out above.

Kaufman, J., and Grover, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.