96 Cal.App.3d 555 (1979)
158 Cal. Rptr. 137
NORMAN G. GAY, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD, GUARANTEE COLLECTION COMPANY et al., Respondents.
Docket No. 54385.
Court of Appeals of California, Second District, Division Three.
August 30, 1979.
*557 COUNSEL
Kessler & Downen and Leonard Kessler for Petitioner.
*558 Evans, Dalbey & Cumming, Ray B. Cumming, Mansell, Manchester, Dean & Long and Stafford R. Leland for Respondents.
OPINION
COBEY, Acting P.J.
Petitioner Norman G. Gay contends that all of his psychiatric disability is related to his cumulative trauma injury (see Lab. Code, § 3208.1) and that the Workers' Compensation Appeals Board (Board) erred in apportioning 50 percent of that permanent disability as nonindustrial. For the reasons stated below, we annul the Board's finding of apportionment and remand the matter to the Board.

I. SUMMARY OF APPEALS BOARD PROCEEDINGS
Gay, while employed as a bill collector by respondent Guarantee Collection Company for the period November 2, 1970, through August 31, 1973, and by respondent Petroleum Collection Company for the period September 1, 1973, to September 1, 1975, sustained injury arising out of and occurring in the course of this employment consisting of psychiatric disability.
The initial treating psychiatrist, Robert P. Sedgwick, M.D., indicated in his report of January 9, 1976, that Gay was "psychologically disturbed." Dr. Sedgwick stated he had "no knowledge of the actual conditions at [Gay's] work and, therefore, [had] no opinion as to whether work factors were important in his present nervous condition and disability." Dr. Sedgwick pointed out, however, that Gay had "similar symptoms" prior to employment at Guarantee and that Gay had said that he felt subject to a series of persecutions since 1967.
Vera Wayman, M.D., Gay's medical/legal and treating psychiatrist following Dr. Sedgwick, reported a diagnosis of "schizophrenia depressed." In her report of March 23, 1977, Dr. Wayman indicated that Gay's permanent and stationary psychiatric disability was "pronounced," a 100 percent rating. Regarding apportionment, while noting Gay's family and other personal difficulties, Dr. Wayman opined all of his permanent disability was industrial. Dr. Wayman stated in her report of December 10, 1976: "I have no evidence that Mr. Gay was emotionally disabled for industrial purposes prior to his harassment and pressurized problems in trauma that evolved from his work.... I have no evidence *559 that he would be in his present emotional state had he not been under this severe strain at his job."
The parties agreed to use Donald H. Naftulin, M.D., as an agreed medical examiner in psychiatry. In his report of February 16, 1977, Dr. Naftulin opined that Gay was indeed suffering from psychiatric disability which was related to his employment. Dr. Naftulin, however, did conclude that apportionment was in order. In his report the doctor stated: "[Gay] denies any [psychiatric] symptoms having occurred previously but, on close history, it becomes apparent that he overreacted to work stress in 1962 or 1963 following a suicide of another agent's client, attempted to leave the collection business because of the suicide, and preoccupation with his own responsibility in the possible death of clients.... In addition, although the patient denies history of previous psychiatric symptomatology similar to [his present] symptoms cited above, both my examination and that reported by Dr. Sedgwick suggest that he had interpersonal difficulty with neighbors regarding vandalism, previous stress as a collection agent before the 5 or 6 years with his current employer, and some concern although not admitted by patient of his daughter's running away from home in 1972.[[1]]
".... .... .... .... ...
"... I do believe he is suffering from the psychiatric symptoms he elaborates. However, on the basis of my examination, the longstanding schizoid personality suggested in the MMPI results and the reports of Dr. Wayman and Dr. Sedgwick, I would infer he has had symptomatology pre-existing his current employment. I think these symptoms worsened with his current employment but were probably aggravated by the truancy of his daughter as well. However, not the time nor the intensity of feeling are remembered by the patient accurately.
"Putting this entire picture together, I would have to state that Mr. Gay suffers a psychiatric disability characterized by a schizoid personality with passive-aggressive features which antedated his current illness of longstanding duration. Whether any of the symptoms pre-existed his current employment is speculative since the patient denies it. However, I would think that in all medical probability he did have some of the psychiatric symptomatology. It is also medically probable that these symptoms have *560 been aggravated in the course of his current employment and are currently moderately severely disabling by WCAB standards.... However, I would think that 50% of his symptomatology is attributable to a preexisting personality disorder, 25% attributable to stress of previous employment and possibly the truancy of his daughter for three months, and 25% attributable to his most recent employment since 1970 and 1971...." (Italics added.)
On April 20, 1977, Dr. Naftulin was cross-examined by the parties. During the cross-examination, Dr. Naftulin reiterated his view that Gay definitely had psychiatric problems in 1970, which would be prior to the employment for the defendant employers in this case. As to whether Gay would have developed any psychiatric illness absent his employment, Dr. Naftulin stated:
"My belief is that even if he had not worked in collections, he might have developed something like this. The likelihood is there, given the basic personality structure. How probable it is versus how possible, I don't know. It's a coin toss, but I think he would have developed pressures in other areas as well, even if the work had not been there. It might not have occurred as rapidly.
".... .... .... .... ...
"There were problems with the neighbors, problems with previous jobs, problems about his own loss of self-esteem when he worked for the May Company 13 years ago. In and of themselves, these individual things alone might not have precipitated or caused what is happening, but the cumulative effect of them, plus his basic personality structure, I think would have resulted in something like what he now has, even had he not been working as a collection agent."
As to the basis of his percentages of apportionment, Dr. Naftulin admitted that "The apportionment is based on the extent of contributing factors to the disability...."
Based upon her review of Dr. Naftulin's report and testimony, the workers' compensation judge concluded that 50 percent apportionment of the permanent disability as nonindustrial was in order. The judge apparently did not find only 25 percent was industrial as stated by Dr. Naftulin because Dr. Naftulin's apportionment of 25 percent to prior employment was impermissible under Labor Code section 5500.5. (See *561 Flesher v. Workers' Comp. Appeals Bd. (1979) 23 Cal.3d 322 [152 Cal. Rptr. 459, 590 P.2d 35].)[2]
Gay then sought reconsideration by the Board. In a two-to-one panel decision of Board members, the Board denied reconsideration and stated that there was "substantial evidence in the record, including ... medical evidence, to support the trial judge's finding to the effect that 50% of [Gay's] disability is attributable to the pre-existing condition and 50% to the industrial injury herein." The dissenting commissioner opined that the "record does not support the finding of pre-existing disability as it cannot be demonstrated by competent evidence that the pre-existing condition did interfere or would have actually interfered with any type of work activity."

II. DISCUSSION:
The statutes governing apportionment generally are Labor Code sections 4663[3] and 4750.[4] (See, 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev.ed. 1979) §§ 14.03, 14.04; Mastoris, Summary of 1978 Cal. Workers' Compensation Law (1979) pp. 66-69.)
(1) Under both Labor Code section 4663 and section 4750 the employer is liable to the extent the industrial injury accelerates, aggravates or "lights up" the preexisting disability, condition or impairment. (Callahan v. Workers' Comp. Appeals Bd. (1978) 85 Cal. App.3d 621, 629 [149 Cal. Rptr. 647]; Franklin v. Workers' Comp. Appeals Bd. (1978) 79 Cal. App.3d 224, 237, 242-245 [145 Cal. Rptr. 22]; Dorman v. Workers' *562 Comp. Appeals Bd. (1978) 78 Cal. App.3d 1009, 1018 [144 Cal. Rptr. 573]; Bstandig v. Workers' Comp. Appeals Bd. (1977) 68 Cal. App.3d 988, 997 [137 Cal. Rptr. 713].) Neither section permits apportionment of pathology (i.e., causative factors) but only apportionment of disability. (Duthie v. Workers' Comp. Appeals Bd. (1978) 86 Cal. App.3d 721 [150 Cal. Rptr. 530]; Callahan, supra, 85 Cal. App.3d 621; Franklin, supra, 79 Cal. App.3d 224.)
(2) In apportioning under Labor Code section 4663 it must be shown that the apportioned percentage of nonindustrial permanent disability would have resulted at present even in absence of the industrial injury. (Duthie, supra, 86 Cal. App.3d at pp. 727-731; Franklin, supra, 79 Cal. App.3d at pp. 242-247.) The issue is what in fact is the cause of the present disability rather than what are the hypothetical causes of a disability that might occur at some indefinite time in the future. (Duthie, supra, 86 Cal. App.3d at p. 728; Franklin, supra, 79 Cal. App.3d at p. 243.) (3) Thus, to support apportionment of nonindustrial disability under Labor Code section 4663, there must be medical evidence expressly stating that the apportioned disability is the result of the natural progression of the preexisting nonindustrial condition and such nonindustrial disability would have occurred even in absence of the industrial injury. (Zemke v. Workmen's Comp. App. Bd. (1968) 68 Cal.2d 794 [69 Cal. Rptr. 88, 441 P.2d 928]; Duthie, supra, 86 Cal. App.3d at pp. 728-730.) As Dr. Naftulin does not explain apportionment in terms of the proper legal standard of section 4663, there can be no apportionment based upon this section, at least upon the present record. (Dorman, supra, 78 Cal. App.3d at p. 1018.)
(4) "[I]n order for the Board to rely upon a physician's evaluation as to apportionment under section 4750, `the physician must disclose adequate familiarity with the preexisting disability.' (Dorman, supra, 78 Cal. App.3d 1009, 1018.) That is, the physician must describe in detail the exact nature of the preexisting disability and the basis for such an opinion in order that the Board be able to determine whether the physician is properly apportioning under correct legal principles." (Callahan, supra, 85 Cal. App.3d at p. 630.) Thus, in order to apportion Gay's permanent disability to a preexisting disability or impairment under section 4750, Dr. Naftulin should have translated how his apportionment figure fits into the nature of alleged preexisting psychiatric condition. (Ibid.) In the present matter Dr. Naftulin failed to do so.
*563 Respondent employers assert Dr. Naftulin's opinion does support apportionment to a preexisting psychiatric disability or impairment. Respondent employers point out Dr. Naftulin expressed the opinion that Gay had psychiatric symptomatology prior to employment at Guarantee Collection. Apportionment upon such symptomatology is seriously questioned. To the extent such symptomatology is related to Gay's employment prior to Guarantee, it is not apportionable to nonindustrial disability as pursuant to Labor Code section 5500.5 such is the liability of respondent employers. (Flesher, supra, 23 Cal.3d 322.) (5) Apportioning as nonindustrial a component part of the industrial injury itself is not permissible. (Ibid., see also, Franklin, supra, 79 Cal. App.3d at p. 241.)[5] The legal impact of Labor Code section 5500.5 on his apportionment should have been made clear to Dr. Naftulin.
At oral argument respondent employers also asserted that Dr. Naftulin was as clear regarding apportionment as is medically possible. We observe, however, that during his cross-examination Dr. Naftulin was not sufficiently questioned with regard to the basic apportionment inquiries of what portion of the present disability was related to the natural progression of the preexisting nonindustrial condition (Lab. Code, § 4663) and what portion of the disability was preexisting nonindustrial disability (Lab. Code, § 4750).[6]
We do not comprehend how the parties can expect any physician to properly report in workers' compensation matters unless he is advised of the controlling legal principles. Physicians are trained to discover the etiology of an illness. Finding the causes is important in preventive medicine and curing illness once developed. (Duthie, supra, 86 Cal. App.3d at pp. 728-729.) Legal apportionment is not identical to theories of medical causation. Physicians in workers' compensation matters must accordingly be educated by the parties on the correct legal standards of apportionment. (Transcripts of 1979 Developments Tapes (Cont.Ed.Bar 1979) Developments in Workers' Compensation Practice  1979, § 10.3, p. 231.) Thus, here, the failure of Dr. Naftulin to *564 discuss apportionment in terms of the proper legal standard is not actually his fault but that of the parties.
Accordingly, the Board's present finding on apportionment must be annulled. This is not to say that there can not be apportionment of Gay's present psychiatric disability, but only that Dr. Naftulin's present opinion on apportionment does not meet the required evidentiary standards under either Labor Code section 4663 or section 4750.
Gay argues that Dr. Naftulin's opinion will not under any circumstances support apportionment as Dr. Naftulin in his report states: "Whether any of the symptoms preexisted his current employment is speculative since the patient denies it." Gay urges that Dr. Naftulin thus acknowledges there is no legal basis for apportionment because there is a lack of evidence of preexisting disability and that Dr. Naftulin is improperly "speculating" about apportionment. We do not entirely agree.
In evaluating a medical report, isolated statements may be misleading. Intellectual candor of a physician may lead to single statements which, when isolated, may be misunderstood. (6) In evaluating the evidentiary value of medical evidence, a physician's report and testimony must be considered as a whole rather than in segregated parts. (See Lamb v. Workmen's Comp. Appeals Bd. (1974) 11 Cal.3d 274, 281 [113 Cal. Rptr. 162, 520 P.2d 978]; McAllister v. Workmen's Comp. App. Bd. (1968) 69 Cal.2d 408, 416-417 [71 Cal. Rptr. 697, 445 P.2d 313]; Travelers Ins. Co. v. Ind. Acc. Com. (Odello) (1949) 33 Cal.2d 685, 687 [203 P.2d 747]; Mann v. Workmen's Comp. App. Bd. (1968) 265 Cal. App.2d 333, 339 [71 Cal. Rptr. 237]; Foremost Dairies v. Industrial Acc. Com. (1965) 237 Cal. App.2d 560, 572 [47 Cal. Rptr. 173].) Thus, the physician's entire report and testimony when considered as a whole, must demonstrate that, based upon reasonable medical probability, there is a legal basis for apportionment. (See McAllister, supra, 69 Cal.2d at pp. 416-417; Travelers Ins. Co., supra, 33 Cal.2d at p. 687.)
Further, the denial by Gay of preexisting emotional problems is not necessarily, by itself, determinative. (7) Apportionment is a factual matter for the appeals board to determine based upon all the evidence. (Franklin, supra, 79 Cal. App.3d at p. 238.) As this court has previously noted, the employment at the time of injury may have been merely congenial to the preexisting disability to which apportionment under Labor Code section 4750 is sought (Callahan, supra, 85 Cal. App.3d at pp. 630-631; Franklin, supra, 79 Cal. App.3d at pp. 237-241) and for *565 apportionment under Labor Code section 4663 the preexisting condition need not be symptomatic and disabling at the time of the industrial injury so long as it manifests itself and becomes disabling after the injury (Duthie, supra, 86 Cal. App.3d at p. 728; Franklin, supra, 79 Cal. App.3d at pp. 243-246).
We are cognizant that it may at times be a formidable task for a physician to state precise figures on apportionment. The physician often must make conclusions when faced with matters difficult to measure and with conflicting factual contentions made by the parties. (See Liberty Mut. Ins. Co. v. Industrial Acc. Com. (Serafin) (1948) 33 Cal.2d 89 [199 P.2d 302].) (8) Accordingly, it is permissible for the physician to state his opinion on apportionment in terms of the reasonably medically probable range (see U.S. Auto Stores v. Workmen's Comp. App. Bd. (Brenner) (1971) 4 Cal.3d 469 [93 Cal. Rptr. 575, 482 P.2d 199]); provided, however, that the physician states in his report the basis and variable facts determining the range of apportionment.[7] The appeals board may then, after determining the true facts based upon the conflicting evidence, determine the issue of apportionment based upon the range of evidence in the record. (De La Tova v. Industrial Acc. Com. (1955) 137 Cal. App.2d 516, 523 [290 P.2d 377].)

III. DISPOSITION:
The award herein and the Board's order denying reconsideration are annulled insofar as they pertain to apportionment, and the matter remanded to the Board for such further proceedings as are consistent with the court's opinion herein.
Allport, J., and Potter, J., concurred.
NOTES
[1] Dr. Wayman, however, indicated that Gay's daughter ran away from home for two months in 1968 and not in 1972. Gay did not testify at the hearing and at his deposition testified that he could not remember when his daughter ran away from home.
[2] As applies to the injury herein, Labor Code section 5500.5 limits liability in cumulative trauma injuries to the employers during the last five years of employment. The employers within such liability period are liable for the entire industrial injury even injury related to employment exposure prior to the liability period. (Flesher, supra, 23 Cal.3d 322; see City of Los Angeles v. Workers' Comp. Appeals Bd. (Calvert) (1978) 88 Cal. App.3d 19, 26 [151 Cal. Rptr. 679], for discussion of recent amendments to Lab. Code, § 5500.5.)
[3] Labor Code section 4663 provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."
[4] Labor Code section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."
[5] Separate cumulative trauma injuries are not here alleged. (See City of Los Angeles, supra, 88 Cal. App.3d at pp. 28-30.)
[6] Dr. Naftulin did say, as noted above (ante, p. 560), that if Gay had not worked in collections "he might have developed something like this" but qualified this by stating "[i]t might not have occurred as rapidly" in the absence of the industrial stress. Dr. Naftulin is thus improperly talking of some hypothetical disability rather than what the actual cause of the present disability is.
[7] Purely factual matters, in the final analysis, are for the appeals board and not the physician to determine. (Beaty v. Workers' Comp. Appeals Bd. (1978) 80 Cal. App.3d 397, 404-405 [144 Cal. Rptr. 78].)