Teresa AMBROSINI, et al., Appellants,

v.

Jorge LABARRAQUE, M.D.,
et al., Appellees.

Nos. 90–7146 and 90–7148.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 24, 1992.

Decided June 12, 1992.

Barry J. Nace, Washington, D.C., for appellants in 90–7146 and 90–7148.

David M. Covey, New York City, of the bar of the United States Court of Appeals for the State of New York, pro hac vice, by special leave of the Court, with whom John F. Mahoney, Washington, D.C., was on the brief, for appellees, The Upjohn Co., in both cases.

Michael F. Flynn, Jr. and Katherine S. Duyer, Rockville, Md., were on the brief, for appellee, Jorge Labarraque, in 90–7146 and 90–7148. James P. Gleason, Rockville, Md., also entered an appearance for appellee.

Vincent H. Cohen and Walter A. Smith, Jr., Washington, D.C., entered appearances for appellee, Richardson–Merrell, Inc. in both cases.

Before: MIKVA, Chief Judge, RUTH B. GINSBURG and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Escolastica and Bruno Ambrosini, on behalf of themselves and their daughter Teresa, appeal a decision by the district court granting summary judgment in favor of defendants, The Upjohn Company and Dr. Jorge Labarraque. The district court held that the Ambrosinis failed to present specific, admissible scientific evidence sufficient to create a genuine issue of material fact on the issue whether the drug Depo–Provera caused the birth defects suffered by Teresa Ambrosini. The Ambrosinis argue that the district court erred in applying this court's earlier decision in *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823 (D.C.Cir.1988), as well as Federal Rule of Evidence 703, in excluding their experts' affidavits. The Ambrosinis contend that the affidavits had a sufficient foundation under Rule 703 and contained the detail necessary to defeat the motion for summary judgment. Because we are convinced that the district court erred in applying the *Richardson* decision, as well as the standards governing summary judgment, we reverse the district court's grant of summary judgment as premature and remand for further proceedings.

## I. BACKGROUND

Teresa Ambrosini suffers from severe birth defects including facial and ear malformations, hearing loss due to middle ear abnormalities, eye and vertebral malformations, and cleft lip and palate. The Ambrosinis brought an action against the manufacturers of the drugs Bendectin and Depo–Provera claiming that the drugs, either individually or in combination, caused Teresa's birth defects. The Ambrosinis

also named as a defendant Mrs. Ambrosini's doctor, Dr. Jorge Labarraque, who prescribed the drugs. The claims against the manufacturer of Bendectin were later dismissed leaving only Upjohn, the manufacturer of Depo–Provera, and Dr. Labarraque as defendants.

After preliminary discovery, Upjohn moved for summary judgment, contending that no reliable scientific evidence exists to support the contention that Depo–Provera caused Teresa's birth defects. In support of its motion, Upjohn submitted the affidavit of Dr. Joe Leigh Simpson who discussed three epidemiological studies, as well as other published articles and studies, all indicating that medroxyprogesterone (the chemical name for Depo–Provera) did not cause the type of birth defects suffered by Teresa Ambrosini.

In response to Upjohn's motion, the Ambrosinis submitted the affidavits of two expert physicians, Dr. Allen S. Goldman and Dr. Brian Strom. At the same time, the Ambrosinis moved to amend their list of experts provided under Federal Rule of Civil Procedure 26(b)(4) by replacing their previously named experts with Dr. Goldman and Dr. Strom. Although Upjohn opposed the switch, the district court did not rule on the Ambrosinis' motion and considered the experts' affidavits for the purpose of ruling on the summary judgment motion.

In his affidavit, Dr. Goldman stated, in relevant part, that:

I am familiar with the available scientific and epidemiological data concerning progestin and progesterone agents including the product manufactured by the defendant Upjohn Company known as Depo–Provera, and it is my opinion within a reasonable degree of medical and scientific certainty that Depo–Provera does cause severe and disfiguring birth defects of the type that is suffered by Teresa Ambrosini. It is further my opinion that within a reasonable degree of medical certainty Teresa Ambrosini's birth defects were a result of the ingestion of Depo–Provera.

Dr. Goldman's affidavit did not, however, explain in detail the basis for his conclusion nor did it specifically state which studies, reports, or articles he relied on.

Dr. Strom stated in his affidavit that: It is my opinion that from a review of the epidemiological data that progestins, in general, do cause birth defects. This opinion is based upon the epidemiological data that is available in the literature. Further, in utilizing my education, training, and experience in the field I have used the same methodology that is generally and reasonably relied upon by epidemiologists and specifically those epidemiologists who interpret data involving drugs that are believed to cause birth defects.

Dr. Strom's affidavit also did not identify the publications, studies, or methodology he used in forming his opinion.

After considering the affidavits submitted by both parties, the district court granted Upjohn's motion for summary judgment. The court reasoned that "[p]laintiffs have failed to demonstrate that there are genuine issues of material fact or to identify admissible scientific evidence upon which a jury could find that Depo–Provera is a human teratogen." *Ambrosini v. Richardson–Merrell, Inc., et al.*, No. 84–3483, slip op. at 13 (August 31, 1990) (hereinafter *Memorandum Opinion*). The court interpreted our decision in *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823 (D.C.Cir.1988), *cert. denied*, 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989) as requiring "specific, admissible scientific proof" in support of a claim that a drug is responsible for causing birth defects. *Memorandum Opinion*, at 8. The court held that the "conclusory and unsupported" affidavits submitted by the experts were insufficient under *Richardson*, as well as under Rule 56 of the Federal Rules of Civil Procedure, to defeat Upjohn's motion for summary judgment. *Memorandum Opinion*, at 12.

## II. ANALYSIS

### A. *Expert Opinion Under* Richardson.

We first address the district court's conclusion that summary judgment was proper

under our decision in *Richardson*. *Richardson* addressed the admissibility of expert testimony under Federal Rule of Evidence 703 which governs the basis for expert opinions. The Rule provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

FED.R.EVID. 703. Sometimes referred to as an "expert testimony exception to the hearsay rule," *see e.g. United States v. Unruh*, 855 F.2d 1363, 1376 (9th Cir.1987), Rule 703 broadens the acceptable bases for expert testimony by allowing an expert to base an opinion on hearsay and other evidence not admissible in court. *See* Fed.R.Evid. 703 advisory committee's note; JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶ 703[01], at 6–7 (1991). Also, the Rule allows an expert to avoid the time consuming process of introducing otherwise admissible evidence that forms the basis for the expert's opinion. As the advisory committee recognized:

> [A] physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance on them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

FED.R.EVID. 703 advisory committee's note.

The expert testimony at issue in *Richardson* was a physician's opinion that the drug Bendectin caused the birth defects suffered by the plaintiffs' child. The expert, Dr. Alan K. Done, based his opinion

on four types of evidence: (1) The chemical structure of Bendectin, (2) *in vitro* (test tube) studies, (3) *in vivo* (animal) studies, and (4) a reanalysis of the defendant's epidemiological studies showing no causal connection between the drug and the birth defects in question. *Richardson*, 857 F.2d at 826.

In his testimony, however, Dr. Done acknowledged that the chemical, *in vitro*, and *in vivo* studies alone could not form a sufficient basis to conclude that Bendectin caused birth defects. *Id.* And when confronted with epidemiological studies showing no statistically significant association between Bendectin and birth defects, Dr. Done conceded that he would not give an opinion as to causation unless epidemiological studies showed a statistically significant association between Bendectin and birth defects. *Id.* at 831. Furthermore, while Dr. Done found a statistically significant association, he did so only by recalculating the data in studies that found none, and his recalculations were never published or subjected to peer review. *Id.*

*Richardson* rejected Dr. Done's opinion, therefore, because it lacked an adequate basis under Rule 703. The chemical, *in vitro*, and *in vivo* studies could not form a sufficient basis under Rule 703 because, as Dr. Done himself acknowledged, those studies were not of a type reasonably relied on by experts in the field to support a conclusion that Bendectin caused birth defects. *Id.* at 830. Because Dr. Done's recalculations of published epidemiological studies had never themselves been published or subject to peer review, we concluded that the recalculated epidemiological evidence also was insufficient to form an adequate scientific basis under Rule 703. *Id.* at 831.

In *Ealy v. Richardson–Merrell, Inc.*, 897 F.2d 1159 (D.C.Cir.1990), we reaffirmed our holding in *Richardson*. That Bendectin case involved the same chemical, *in vitro*, *in vivo*, and reanalyzed epidemiological data that was offered in *Richardson*, along with an additional *in vivo* study. *Id.* Once again, we held that the expert opinions were inadmissible because they lacked an adequate scientific basis under Rule 703. *Id.* at 1162. In effect, we took judicial notice of *Richardson*'s conclusion that the chemical, *in vitro*, *in vivo*, and recalculated epidemiological studies were not of a type reasonably relied on by experts in the field. *Richardson*, we held, provided a "binding legal precedent governing the admissibility of expert opinion on the ability of Bendectin to cause human birth defects." *Id.* Because the experts in *Ealy* offered no different bases for their opinions, we held that the opinions were inadmissible under Rule 703. *Id.* at 1163.

Both *Ealy* and *Richardson* distinguished this court's earlier decision in *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). The defendant in *Ferebee* argued that expert opinion that paraquat caused pulmonary fibrosis was inadmissible because it was too "novel." The defendant contended that, to be admissible, the expert opinion had to be generally accepted as reliable within the expert's field. Since there had never before been any evidence, nor any suggestion, that paraquat caused pulmonary fibrosis, the defendant argued that the evidence could not, at that point, be generally accepted in the scientific community. *Id.* at 1535.

The *Ferebee* court noted the difference between expert opinion based on controversial techniques or methods and expert opinion based on well-founded methods but which reaches a novel, and perhaps controversial, conclusion. *Id.* "As long as the basic methodology employed to reach such a conclusion is sound," the court held, "[the] law does not preclude recovery until a 'statistically significant' number of people have been injured or until science has the time and resources to complete sophisticated laboratory studies of the chemical." *Id.* at 1536.

*Ferebee*, therefore, did not involve a challenge to the underlying basis or methods of an expert's opinion under Rule 703, as did *Richardson* and *Ealy*. In fact, the experts in *Ferebee* relied on the "same diagnostic methodology" in forming their opinions.

*Id.* at 1535. Rather, *Ferebee* involved a challenge to the novelty of the expert's ultimate conclusion. Because both experts relied on accepted methods and data but reached different conclusions based on that information, the court held that it was "a classic battle of the experts, a battle in which the jury must decide the victor." *Id.* As we recognized in *Richardson*, "[i]f experts are willing to testify to causation in such situations *and their methodology is sound,* the jury verdict should not be disturbed." *Richardson,* 857 F.2d at 832 (emphasis added).

Four other Circuits have now reached conclusions similar to *Richardson* and *Ealy* in cases involving the drug Bendectin, although their reasoning has often differed. *See Turpin v. Merrell Dow Pharmaceuticals, Inc.,* 959 F.2d 1349 (6th Cir. 1992) (finding expert testimony insufficient to support a finding that Bendectin caused plaintiff's birth defects); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 951 F.2d 1128 (9th Cir.1991) (finding plaintiff's expert testimony inadmissible because reanalysis of peer-reviewed epidemiological studies is not a generally accepted scientific methodology); *Brock v. Merrell Dow Pharmaceuticals, Inc.,* 874 F.2d 307, *modified,* 884 F.2d 166, *reh'g denied,* 884 F.2d 167 (5th Cir.1989) (finding expert testimony insufficient to establish causation); *Lynch v. Merrell–National Lab., Inc.,* 830 F.2d 1190 (1st Cir.1987) (finding plaintiff's expert testimony to be inadmissible because it lacked a proper foundation); *see also De-Luca v. Merrell Dow Pharmaceuticals, Inc.,* 911 F.2d 941 (3rd Cir.1990) (requiring the district court to assess the reliability of the methodology of plaintiff's expert).

In this case, the district court's reasons for granting summary judgment under *Richardson* are less than clear. At times it appears that the district court read *Richardson* as creating a heightened standard for causation in drug liability cases such as this one. The district court held that *Richardson* requires plaintiffs to bring forward "specific, admissible scientific proof in support of their claim that a drug is responsible for causing plaintiff's birth defects." *Memorandum Opinion,* at 8. The court

later noted as part of the basis for its grant of summary judgment that the affidavits submitted by the Ambrosinis' experts failed to set forth the facts and data underlying their opinions. *Id.* at 10. In other places, however, the district court seems to have assumed that the basis for the experts' opinions was the same as in *Richardson,* and rejected the opinions on that ground without mentioning Rule 703. *Id.* In any event, we think that the district court's holding reflects a misunderstanding of *Richardson.*

■ The *Richardson* court did not address the specificity with which an expert must state the basis for his opinion in an affidavit in response to a motion for summary judgment. *Richardson* held only that the chemical, *in vitro,* and *in vivo* studies relied on by the plaintiff's expert could not form an adequate basis for the conclusion that Bendectin caused the plaintiff's birth defects because the expert himself conceded that those studies alone would not reasonably be relied on by experts in the field. *Richardson,* 857 F.2d at 830. Furthermore, because the expert's reanalyzed epidemiological data had never been published or subject to peer review, the opinion based on that reanalysis was inadmissible in the face of a wealth of published epidemiological studies that concluded to the contrary. *Id.* at 831. Nowhere in either *Richardson* or *Ealy* did we state that an expert's opinion (or an expert's affidavit in response to a motion for summary judgment) must specify the basis for the opinion to be admissible under Rule 703.

Indeed, such a holding would be contrary to Rule 705. That Rule provides:

The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

FED.R.EVID. 705. Rule 705 eliminates the prior practice of requiring an expert to set out, specifically, the facts and data under-

lying an opinion before allowing the expert to testify. *See* JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶ 705[01], at 5–6 (1991). Under Rule 705, an expert's affidavit, no matter what the basis, cannot be excluded solely because it fails to disclose the facts or data underlying the opinion.

The Ambrosinis responded to Upjohn's motion for summary judgment by offering the affidavits of two experts: Dr. Strom, who concluded that progestins, in general, cause birth defects, and Dr. Goldman who concluded, more specifically, that Depo–Provera caused Teresa Ambrosini's birth defects. At that point, pursuant to Rule 705, the court could have required Dr. Strom and Dr. Goldman to disclose the bases for their opinions so that it could determine whether the opinions had an adequate foundation (i.e. whether they were based on information that experts in the field would reasonably rely on in determining whether a particular drug causes birth defects). Only then could the court determine whether the affidavits were admissible under Rule 703. A court must know the basis for an expert's opinion before it can determine that the basis is not of a type reasonably relied on by experts in the field. *See e.g. In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 854–55 (3d Cir. 1990). Because the court below never delved further into the basis for the expert opinions, particularly the one supplied by Doctor Goldman, *see infra* pp. 1470–71, we are persuaded that the court acted prematurely in granting summary judgment on the basis of *Richardson*.

Upjohn would have us read the *Richardson* decision more broadly, arguing that *Richardson* did more than rule on the admissibility of expert opinion under Rule 703. Upjohn contends that *Richardson* upheld the district court's decision to issue a j.n.o.v. because expert conclusions based on chemical, *in vitro*, *in vivo*, and unpublished recalculations of epidemiological data do not provide "sufficient evidence upon which a jury could properly base a verdict for the plaintiff." But *Richardson* did not hold that chemical, *in vitro*, and *in vivo* studies would be insufficient, in all cases, to support a conclusion that a particular drug causes birth defects. *Richardson* held only that Dr. Done's testimony was inadmissible under Rule 703 because he acknowledged that the data underlying his opinion was not of a type reasonably relied on by experts in the field. And because the court found that, without that evidence, no reasonable jury could find for the plaintiff, it upheld the district court's decision to grant a j.n.o.v.. *See Richardson*, 857 F.2d at 833.

The distinction we draw between this case and *Richardson* is not a minor one. When a court denies the right to have a jury decide a disputed issue, especially one of a scientific nature, its reasons for doing so must be strong. *See Ferebee*, 736 F.2d at 1535 (expert opinion based on sound scientific methodology presents "a classic battle of the experts, a battle in which the jury must decide the victor"). Science is a rapidly changing field. Methodologies rejected today may be universally accepted in the future. DNA evidence as a method of identification, for example, was virtually unheard of 25 years ago but is gaining widespread acceptance in the courts today. *See* Comment, *Trial By Certainty: Implications of Genetic "DNA Fingerprints"*, 39 EMORY L.J. 309 (1990) (citing *Andrews v. State*, 533 So.2d 841 (Fla.Dist.Ct.App. 1988) as the first case in the United States accepting DNA evidence). Our decisions must leave the way open for these changes.

Upjohn makes much of the fact that the record in this case is the same as the record that this court considered when it affirmed the district court's decision to grant summary judgment to Merrell–Dow, Upjohn's former co-defendant in this case. We point out, however, that the district court granted Merrell–Dow's motion for summary judgment only after issuing an Order to Show Cause requiring plaintiffs to identify a basis, admissible under Rule 703 and *Richardson*, for their expert's opinion that Bendectin caused Teresa's birth defects. *See Koller v. Richardson–Merrell, Inc.*, No. 80–1258, slip op. at 2 (D.D.C. June 30, 1989), *amended sub nom. Ambrosini v. Richardson–Merrell, Inc.*, No. 86–0278

(D.D.C. July 12, 1989), *aff'd*, No. 90–7148 (D.C.Cir.1990). Only after the Ambrosinis failed to identify a basis for their expert's opinion *other than* the chemical, *in vitro*, *in vivo*, and reanalyzed epidemiological data rejected in *Richardson* did the court grant Merrell–Dow's motion for summary judgment. *Id.* at 8. This is precisely the sort of inquiry the court must undertake before determining whether expert testimony has an adequate foundation under Rule 703. No show cause order was issued in this case before the district court granted Upjohn's motion.

**B.** *The Standards for Summary Judgment Under Rule 56.*

■ Our inquiry does not end with the determination that the district court erred in granting summary judgment on the basis of this court's decision in *Richardson*, for even if the expert affidavits were admissible under Rule 703, summary judgment would have been proper if the affidavits were not sufficient to create a genuine issue of material fact. This court, as well as others, has recognized that the issue of admissibility of an expert's opinion under Rules 703 and 705 is separate and distinct from the issue whether the testimony is sufficient to withstand a motion for summary judgment under Rule 56. *See Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C.Cir.1977); *Monks v. General Elec. Co.*, 919 F.2d 1189, 1192–93 (6th Cir. 1990); *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir.1989); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700–701 (9th Cir.1981).

Rule 56(e) of the Federal Rules of Civil Procedure states that, in order to defeat a well-supported motion for summary judgment, an affidavit in response to the motion "must set forth *specific facts* showing that there is a genuine issue for trial." FED. R.CIV.P. 56(e) (emphasis added). Upjohn insists, and the district court apparently would agree, that because the affidavits of Doctors Strom and Goldman do not set forth the "specific facts" or reasoning be-

hind their opinions, they are insufficient, under Rule 56(e), to defeat the motion for summary judgment. *See Memorandum Opinion*, at 12.

In support of its contention, Upjohn cites to a number of cases, including this court's decision in *Merit Motors*. But in *Merit Motors* we did not uphold the district court's grant of summary judgment because the expert failed to identify the basis for his opinion. Rather, we upheld summary judgment because the district court correctly determined that the plaintiff's expert was unfamiliar with the record in the case and because the expert's opinion was based on speculations and hypotheses that were contradicted by his own deposition testimony. *See Merit Motors*, 569 F.2d at 672; *see also Monks v. General Elec. Co.*, 919 F.2d at 1192 (standard articulated in *Merit Motors* is that affidavits by experts who are unfamiliar with the record are insufficient to withstand summary judgment). The other cases that Upjohn cites are similarly distinguishable.

■ Dr. Goldman's affidavit stated a specific fact, namely that, based on "the available scientific and epidemiological data concerning progestin and progesterone agents including the product manufactured by the defendant Upjohn Company known as Depo–Provera," as well as a review of relevant medical records of Mrs. Ambrosini and her daughter Teresa, Depo–Provera caused Teresa Ambrosini's birth defects. We are convinced that, if admissible, Dr. Goldman's affidavit gave a sufficient factual basis to defeat summary judgment at this point. We need not decide the more difficult question whether Rule 56 would be satisfied by the bare conclusion that Depo–Provera caused Teresa's birth defects. *See Bulthuis v. Rexall Corp.*, 789 F.2d 1315 (9th Cir.1985) (distinguishing between an affidavit that fails to state any basis for its opinion and an affidavit that discloses the general basis for its opinion but fails to explain, in detail, how the opinion was reached). Nor need we decide whether Dr. Strom's affidavit, which concluded only that progestins cause birth de-

fects in general, could defeat summary judgment even at the outset in this case.

CONCLUSION

Without a further inquiry into the factual basis for the opinion of Doctors Goldman and Strom, the district court erred in granting summary judgment based on this court's decision in *Richardson.* And because Dr. Goldman's affidavit set forth a specific fact, we are persuaded that, if admissible, it was enough to defeat Upjohn's motion for summary judgment. We reverse the district court's order granting summary judgment in favor of Upjohn, therefore, and remand for further proceedings consistent with this opinion. Because the district court based its grant of summary judgment in favor of Dr. Labarraque on the same grounds, we also reverse the grant of summary judgment with respect to Dr. Labarraque. On remand, it will remain open to the district court to address the defendants' opposition to the plaintiffs' untimely substitution of Doctors Strom and Goldman in their Rule 26(b)(4) list.

*Reversed and remanded.*