974 F.2d 1342
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charlotte KENNEDY; Robert L. Kennedy, Plaintiffs-Appellants,
v.
COLLAGEN CORPORATION, Defendant-Appellee.
 No. 91-15597.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 15, 1992.
Decided Sept. 8, 1992.
Opinion of June 8, 1992 Withdrawn on Grant of
Rehearing Sept. 3, 1992.
 
 Appeal from the United States District Court for the Northern District of California, NO. CV-89-02331-CAL; Charles A. Legge, District Judge, Presiding.
 N.D.Cal.
 REVERSED AND REMANDED.
 Before FERGUSON, REINHARDT and KOZINSKI, Circuit Judges.
 
 ORDER
 
 1
 Sept. 3, 1992.
 
 
 2
 MEMORANDUM*
 
 
 3
 The petition of the Plaintiffs-Appellants for a rehearing is granted.
 
 
 4
 The Memorandum disposition filed June 8, 1992 is withdrawn.
 
 
 5
 The case will be submitted without oral argument and upon the existing appellate records.
 
 
 6
 This is a products liability case which ended with the granting of summary judgment for the defendant. We reverse.
 
 
 7
 The action arises from Charlotte Kennedy's treatment with ZydermR Collagen Implant ("Zyderm"), a prescription medical product manufactured by defendant Collagen Corporation ("Collagen"). Zyderm is injected by a doctor into facial wrinkles for a smoother appearance. Kennedy claims to have developed systemic lupus erythematosus, an automimmune disease, as a result of this treatment.
 
 
 8
 Collagen filed a motion for summary judgment on the ground that the plaintiffs had failed to produce any evidence establishing a prima facie case of causation.
 
 
 9
 At the hearing on the motion, the plaintiffs submitted an affidavit executed by Dr. Joseph Spindler on the issue of causation. The district court concluded that neither the testimony of the plaintiffs' designated expert witnesses nor Dr. Spindler's affidavit raised a genuine issue of material fact on the issue of causation. In addition, the court denied the plaintiffs' motion to designate additional experts, including Dr. Spindler, because the motion was untimely.
 
 
 10
 The plaintiffs subsequently filed a motion for a new trial, which the court also denied.
 
 
 11
 We reverse. Dr. Spindler's affidavit established the existence of a genuine issue of material fact regarding causation and was sufficient to preclude summary judgment.
 
 DISCUSSION
 
 12
 We review the district court's grant of summary judgment de novo. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir.1989). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 13
 In moving for summary judgment, the defendant did not offer any testimony or affidavits of its own witnesses. Instead, it relied on the deposition testimony of the plaintiffs' experts, excluding of course Dr. Spindler's affidavit.
 
 
 14
 We confine our study of the record to Dr. Spindler's affidavit and do not determine the sufficiency of the deposition testimony of the plaintiffs' other medical experts.
 
 
 15
 Under California law, the Kennedys were required to prove causation "within a reasonable medical probability based upon competent expert testimony." Jones v. Ortho Pharmaceutical Corp., 163 Cal.App.3d 396, 402 (1985). Dr. Spindler's affidavit was such testimony and was sufficient to establish the existence of a genuine issue of material fact regarding causation. Dr. Spindler affirmed that "[b]ased on reasonable medical probability," the Zyderm injections caused Charlotte Kennedy's systemic immunological injuries. Dr. Spindler based his opinion on his examination of Kennedy; review of her medical history and records; numerous laboratory tests of Kennedy which showed a positive ANA, anti-histone antibody, and anticentromere antibody; and the temporal relationship between the injections and her condition. Accepted on its own terms, the affidavit demonstrated a "reasonable medical probability" that the defendant's conduct caused Kennedy's injuries.
 
 
 16
 The defendant contends that Dr. Spindler's use of language such as "suspect" and "could have been" rendered the affidavit insufficient to establish a "reasonable medical probability." We disagree.
 
 
 17
 California courts have held that words such as "speculative" and "conjecture" do not render a doctor's testimony speculative if, taken as a whole, the testimony states the doctor's opinion of reasonable medical probability. See Cullum v. Seifer, 1 Cal.App.3d 20, 26 (1969); Gay v. Workers' Compensation Appeals Bd., 96 Cal.App.3d 555, 564 (1979). In Gay, the plaintiff appealed a finding of the Workers' Compensation Appeals Board that apportioned 50 percent of his psychiatric disability as nonindustrial. The plaintiff attacked the opinion of the psychiatrist who had recommended apportionment and argued, inter alia, that the opinion could not support apportionment because it included the statement, "Whether any of the symptoms preexisted [the patient's] current employment is speculative since the patient denies it." The plaintiff contended that this statement showed that the psychiatrist was improperly "speculating" about apportionment. The court disagreed, stating:
 
 
 18
 In evaluating a medical report, isolated statements may be misleading. Intellectual candor of a physician may lead to single statements which, when isolated, may be misunderstood. In evaluating the evidentiary value of medical evidence, a physician's report and testimony must be considered as a whole rather than in segregated parts. Thus, the physician's entire report and testimony when considered a a whole, must demonstrate that, based upon reasonable medical probability, there is a legal basis for apportionment.
 
 
 19
 96 Cal.App.3d at 564 (citations omitted).
 
 
 20
 In Cullum, a malpractice case, the court reviewed the testimony of an expert witness, a doctor, who testified on the issue of proximate cause. The court examined the totality of the doctor's testimony on the issue and concluded that even though the witness referred at one point to "conjecture," the testimony as a whole stated the doctor's opinion of reasonable medical probability. The court explained:
 
 
 21
 The isolated characterization of 'conjecture' must be weighed as to its true meaning and significance in the light of the testimony which preceded it.... [T]he main object is not to draw fine distinctions based upon accurate definitions or words, but to ascertain the real idea expressed."
 
 
 22
 1 Cal.App.3d at 26 (citations and internal quotation marks omitted). Here, Dr. Spindler's affidavit, read in its entirety, clearly stated his opinion of reasonable medical probability.
 
 
 23
 A jury was entitled to hear Dr. Spindler's testimony. See Ferebee v. Chevron Chem. Co., 736 F.2d 1529, 1535 (D.C.Cir.1984), cert. denied, 469 U.S. 1062 (1984). In Ferebee, where both sides presented expert opinion testimony on the issue of whether paraquat poisoning caused the plaintiff's pulmonary fibrosis, the D.C. Circuit held that the jury was entitled to decide the victor in the battle of experts. Id. The court distinguished between the standard for the admission of evidence based on novel scientific techniques or methodologies, where "the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular scientific field," and the standard for "the admission of scientific opinion testimony that, while controversial in its conclusions, is based on well-founded methodologies." Id. (citations and internal quotation marks omitted). The court stated further:
 
 
 24
 [A] cause-effect relationship need not be clearly established by animal or epidemiological studies before a doctor can testify that, in his opinion, such a relationship exists. As long as the basic methodology employed to reach such a conclusion is sound, such as use of tissue samples, standard tests, and patient examination, products liability law does not preclude recovery until a "statistically significant number of people have been injured or until science has had the time and resources to complete sophisticated laboratory studies of the chemical. In a courtroom, the test for allowing a plaintiff to recover in a tort suit of this type is not scientific certainty but legal sufficiency; if reasonable jurors could conclude from the expert testimony that paraquat more likely than not caused [the plaintiff's] injury, the fact that another jury might reach the opposite conclusion or that science would require more evidence before conclusively considering the causation question resolved is irrelevant. That [the plaintiff's] case may have been the first of its exact type, or that his doctors may have been the first alert enough to recognize such a case, does not mean that the testimony of those doctors, who are concededly well qualified in their fields, should not have been admitted.
 
 
 25
 Id. at 1535-36 (emphasis in original).
 
 
 26
 Here, the reliability of Dr. Spindler's methodology is not disputed. The district court was inaccurate in believing that Dr. Spindler's opinion was based primarily on the temporal relationship between the Zyderm injections and Kennedy's injuries and was not based on "any other laboratory tests of plaintiff, epidemiological evidence, or toxicological evidence." Furthermore, the court was not presented with any facts demonstrating that Dr. Spindler's methodology differed from procedures generally accepted by authorities in the field of immunology.[1] "[I]n determining ... whether the informational basis of an expert opinion is of a type reasonably relied upon by experts in the field, "[t]he proper inquiry is not what the court deems reliable, but what experts in the relevant discipline deem it to be." In re Paoli Railroad Yard PCB Litigation, 916 F.2d 829, 853 (3rd Cir.1990), cert. denied, 111 S.Ct. 1584 (1991) (citations omitted).[2] See also id. at 856-58; DeLuca v. Merrell Dow Pharmaceuticals, Inc., 911 F.2d 941 (3rd Cir.1990) (reversing district court's grant of summary judgment for defendants; holding that the district court erred in failing to make a record-supported, factual finding that plaintiff's doctor relied upon data not regarded as reliable by experts in the field). Thus, the district court erred in concluding that Dr. Spindler's affidavit was insufficient to preclude summary judgment.
 
 
 27
 In closing, we note that Daubert v. Merrell Dow Pharmaceuticals, Inc., 951 F.2d 1128 (9th Cir.1991), and other Bendectin cases are distinguishable. In holding that the plaintiffs' evidence was unreliable, we and other circuits relied on specific factual findings as to what constituted generally accepted scientific methodology. Id. at 1130-31. See also Brock v. Merrell Dow Pharmaceuticals, Inc., 874 F.2d 307, 311-13 (5th Cir.1989), cert. denied, 494 U.S. 1046 (1990); DeLuca, 911 F.2d at 949-52 (discussing Bendectin case law from other circuits). In Daubert, we upheld summary judgment based on the large volume of unfavorable epidemiological studies establishing the absence of causation. 951 F.2d at 1129. See also Brock, 874 F.2d at 311. In that case, "[p]laintiffs' evidence of causation consisted primarily of expert opinion based on in vitro and in vivo animal tests, chemical structure analyses and the reanalysis of epidemiological studies." The defendant's evidence included "the affidavit of a physician and epidemiologist who reviewed all of the available literature on the subject, which included more than 30 published studies involving over 130,000 patients, and concluded that no published epidemiological study had demonstrated a statistically significant association between Bendectin and birth defects." Daubert, 951 F.2d at 1129. Here, Collagen presented no facts contradicting Dr. Spindler's testimony.
 
 We hold:
 
 28
 1. The order granting the defendant's motion for summary judgment is reversed.
 
 
 29
 2. The order denying a new trial is mooted.
 
 
 30
 3. The order denying the plaintiffs leave to designate additional experts is vacated for reconsideration in light of the reversal of summary judgment.
 
 
 31
 REVERSED AND REMANDED.
 
 KOZINSKI, Circuit Judge, dissenting:
 
 32
 This is the heart of Dr. Spindler's affidavit:
 
 
 33
 The existence of anti-histone antibody is suspect [sic] that her immune system was triggered by an external source, which could have been the bovine collagen injections in her case....
 
 
 34
 Mrs. Kennedy's medical history, records and current laboratory results are consistent with a temporal relationship between her injections and her medical condition, including a severe adverse reaction to Defendant's product, with systemic immune disorders and deteriorating medical condition and clinical symptoms.
 
 
 35
 ER, Tab D, at 17 (emphasis added). Dr. Spindler also adds that "[m]ore recently, I have obtained and evaluated current laboratory tests results for her, which reveal a change in her ANA, and in the existence of anticentromere antibody, previously not present." Id. Nowhere does Dr. Spindler explain the meaning of "ANA" or "anticentromere antibody," nor does he intimate what either of these has to do with plaintiff's case against the defendant.
 
 
 36
 Dr. Spindler's affidavit is simply too indefinite to establish a "reasonable medical probability" that Kennedy's disorder is in any way linked with defendant's collagen treatments; it is rank speculation. Under the substantive law of California, which we are bound to apply, Kennedy was obligated to put forth "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Kennedy's reliance upon this affidavit was insufficient to carry her summary judgment burden. I would therefore affirm the judgment against her.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Nor did Collagen contend that Dr. Spindler was not a competent medical expert
 
 
 [2]
 In Paoli, the Third Circuit reversed the district court's grant of summary judgment for defendants and held that the district court had failed to give reasons for excluding as unreliable the bulk of the expert testimony upon which the plaintiffs had relied to establish causation
 In the present case, it is unclear whether the district court found Dr. Spindler's affidavit inadmissible under Fed.R.Evid. 703, or whether the court found the affidavit admissible but concluded that the evidence was nonetheless insufficient to enable a jury to find causation. We need not resolve this ambiguity, however, because we conclude that the affidavit, taken on its own terms, established causation within a reasonable medical probability.